## HENDLER CREAMERY COMPANY *v.* D. P. LILLICH.

*Mutuality of Contract—Injunction Against Breach—Supply of Food Products—Exclusion of Other Sellers.*

Under Code, art. 16, sec. 179 (Equity Rule No. 20), a demurrer and answer may be contained in the same paper.

p. 192

A contract by which plaintiff ice cream maker agreed to install refrigerating apparatus in defendant's drug store, the latter

to have the use thereof for three years free of charge, and defendant agreed to sell plaintiff's products exclusively, was not lacking in mutuality, in view of the agreement by plaintiff to install the apparatus and its actual installation, and there being an implied agreement by plaintiff to furnish the commodities which defendant was to sell.                        pp. 198-203

The adequacy of the consideration for a contract is a question for the parties thereto and not for the courts.                        pp. 199

A contract by which defendant druggist agreed to handle plaintiff's ice cream products exclusively, and to permit the advertisement at his place of business of no such commodities other than plaintiff's, was enforceable in equity, since the damages resulting from its breach would be practically impossible of ascertainment.                        pp. 203, 204

*Decided January 26th, 1927.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by the Hendler Creamery against D. P. Lillich, trading as Lillich's Pharmacy. From an order overruling a demurrer to the answer, sustaining a demurrer to the bill, and dismissing the bill, plaintiff appeals. Reversed.

*Samuel K. Dennis* and *M. Henry Goldstone,* with whom was *C. Gus Grason* on the brief, for the appellant.

*Eugene Frederick,* with whom were *W. LeRoy Ortel* and *Blades, Rosenfeld & Frederick* on the brief, for the appellee.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

DIGGES, J., delivered the opinion of the Court.
The bill of complaint in this case was filed by the appellant seeking an injunction to restrain the appellee from breaching

a written contract entered into between them; or, in other words, the appellant is seeking by his bill to secure specific performance of this contract by way of injunction restraining its breach.   Thereafter the appellee filed a paper containing a demurrer to the whole bill, and. an answer to the specific paragraphs of the bill and also to the whole bill.   To this paper the appellant demurred.   The case was heard by the lower court upon this state of the pleadings, and it resulted in the overruling of the plaintiff's demurrer, and sustaining the defendant's demurrer to the bill of complaint.   From this action the plaintiff below has appealed.   The plaintiff's demurrer, to the paper containing the demurrer and answer of the defendant to the plaintiff's bill, was upon the theory that a demurrer and answer could not be contained in the same paper.   This contention is fully answered by the provisions of the statute, Code, art. 16, sec. 179 (General Equity Rule No. 20), which provides: "The defendant shall be entitled in all cases by answer to insist upon all matters of defense in law or equity, to the merits of the bill of which he may be entitled to avail himself by demurrer."   Since the adoption of this rule, the practice has been frequently employed and has been approved by this Court.   *Ruhl v. Wagner,* 146 Md. 601.   The plaintiff's demurrer was therefore properly overruled.

The real question in the case is presented here by the action of the court in sustaining the defendant's demurrer to the plaintiff's bill.   The appellant is a Maryland corporation located in Baltimore City, engaged in the manufacture and distribution of ice cream and other frozen commodities. The defendant is a druggist engaged in that business at Dundalk, Baltimore County.

The allegations of the bill, in substance, are:

That the plaintiff, for the purpose of carrying on its business, owns and operates a large and expensive manufacturing plant, and operates fleets of trucks in distributing its goods in Baltimore City, Baltimore County, and elsewhere.   That one of the features of its business is supplying drug stores and

other retail business places with its manufactured product. That by reason of the merit of its goods, the efficient management of its business, and the extensive advertisement of its goods, done at great expense for twenty years past, it has acquired the leadership in the ice cream trade in Maryland, and an enviable and valuable reputation and good will in the trade. That among its customers is or was the appellee. That on the 18th day of August, 1925, the appellant and the appellee executed an agreement, as follows:

"This agreement, made this 18th day of August, 1925, between The Hendler Creamery Company, a corporation, duly incorporated under the laws of the State of Maryland, hereinafter called the company, and Dr. D. P. Lillich, Community Bldg., of Dundalk, Md., hereinafter called the customer; witnesseth:

"(1) The company hereby leases to the customer for the term of three years from this date and agrees to install for the customer, at its own expense, except as hereinafter provided, its mechanically refrigerated equipment for preserving ice cream, and the customer in consideration thereof, agrees to buy and use exclusively, and to the extent of his requirements, during said term of three years, ice cream, sherbets and other frozen commodities made by the company, at its established wholesale prices as adopted by it from time to time.

"(2) The customer further agrees to consideration of the premises to use said equipment carefully and keep the same in good order and condition; to supply the water and electric current required for the operation of the equipment at the customer's own expense; to deal exclusively in the ice cream and other products of this company and not handle, advertise, nor permit any advertising matter, products and equipment of any other company or manufacturer, in, around or about the said premises during the term of this lease, and to use said equipment solely and exclusively for ice cream and other products manufactured and sold by the com-

pany; to waive and relinquish all claims against the
company and to exonerate, indemnify and save harm-
less the company from all liability to all parties for
damage or loss in any way arising out of or during the
use of said equipment by the customer; and upon the
termination of this agreement, by expiration of the
term or upon breach by the customer of any of the con-
ditions hereof, to return said equipment to the com-
pany in the same good order and condition as when in-
stalled, reasonable wear and tear excepted. The cus-
tomer shall pay for any damage to the said equipment
while the same is in the possession or on the premises
of the customer which may be due otherwise than to
the ordinary wear and tear incident to the use thereof.
If a change in the location of said equipment shall be-
come necessary the company shall effect such change
upon the application and at the expense of the cus-
tomer.

"(3) Title to and ownership of said equipment is
expressly retained by the company and in case of vio-
lation of any condition of this agreement, including
failure on the part of the customer to pay any indebt-
edness of the customer to the company according to the
company's terms, or if the customer shall attempt to
sell or encumber said equipment or remove same from
the premises where installed by the company, or upon
discontinuance by the customer of the purchase of ice
cream from the company, or upon the issuing of any
attachment, execution, distress for rent or like process
against the customer, or the customer becoming bank-
rupt, the company shall have the right at its option,
to enter into or upon the premises where said equip-
ment may be and, without let or hindrance, to take
possession of and remove said equipment, with or with-
out process of law, and without the company or its
agents being in any way liable for any claim for dam-
age or injury in the removal of said equipment.

"(4) In case the company exercises its right at any
time before the expiration of the term of this lease to
terminate the same by reason of violation of any con-

dition hereof by the customer or for any of the other causes above enumerated the customer agrees to pay to the company the sum of One Hundred Dollars ($100.00) as additional rental for said equipment covering the period from the time of installation thereof until the date of such termination, that amount representing the cost to the company of the installation of the equipment.

"(5) After the expiration of the three-year term of this lease the same shall continue in force for a further term of one year and thereafter from year to year upon the same terms and conditions until terminated by either party upon thirty days' notice in writing to the other prior to the termination of any current term.

"(6) This contract shall extend to and be binding upon the successors of the company and shall also be binding upon the heirs, executors, administrators or successors and assigns of the customer, and the customer agrees to secure the acceptance of his successors or assigns, in the event of a sale or transfer of the business of the customer, by proper endorsement hereon.

"The said equipment and this lease can not be assigned in any manner whatsoever without the written consent of the company first had and obtained.

"In witness whereof the parties hereto have executed this agreement the day and year first hereinabove written.

"The Hendler Creamery Company,
"By J. D. Bawner, Compt.
"D. P. Lillich, Customer.
"Witness: J. W. Clemm.
"Witness: W. U. Steck.
"No. 171 C."

That in pursuance of the terms of said agreement the appellant did forthwith and at its own expense install its mechanical refrigerating apparatus or equipment, referred to in paragraph one thereof, for preserving ice cream and other frozen commodities, in the drug store occupied by the

appellee at Dundalk. That the appellee accepted the equipment; and thereafter, until July 1st, 1926, the relations of the appellant and appellee, as defined and expressed in the agreement, remained and were enjoyed and actively maintained unbroken and unimpaired. That the appellant has on its part well and faithfully done every matter, act or thing required of it to be done under the terms of said agreement, and has always been (and is now, and so tenders itself), able, ready and willing to sell and supply the appellee, to the extent of his requirements, ice cream, sherbets and other frozen commodities made by the appellant at its established wholesale prices as adopted by it from time to time. That the appellee, without just legal cause, has lately refused to buy the frozen commodities specified in the agreement at all from the appellant. That the refrigerating equipment, as installed, remains in the appellee's drugstore. That under the provisions of paragraph one of the agreement the appellee covenanted during the term of the agreement, which was for three years, to deal exclusively in the ice cream and other products of the appellant; and further agreed not to handle, advertise, or permit any advertising matter, products, or equipment of any other company or manufacturer, in, around, or about said premises, the appellee's drugstore. That notwithstanding said covenant the appellee, without legal justification, has done and is doing, and declares his intention of continuing to follow and do acts hereinafter specifically enumerated and which he covenanted not to do, and to refuse to perform the acts which he covenanted to do; that is to say, that contrary to said agreement, the appellee refuses to buy ice cream, sherbets or other frozen commodities made by the appellant; that he buys, sells, and deals in ice cream, in his said drugstore, made by the Horn Ice Cream Company or its parent concern, The Southern Dairies, Incorporated; that he has done, and now advertises and permits advertising matter, products, and equipment of the Horn Ice Cream Company or its parent concern, they being dealers and distributors of

ice cream and other frozen commodities, in, around, and
about the premises occupied and used by the appellee for
his drugstore at Dundalk.   That the said continuing acts
of the appellee in violation of the agreement, and his ex-
pressed intention to persist therein, do and will inevitably
result in the loss of the sale, to the extent of the appellee's
future requirements in his drugstore, of ice cream or other
frozen commodities such as the appellant makes, which said
damage, as a result of the loss of said sale, in the future,
cannot be ascertained and liquidated, the amount of the
appellee's future requirements, while large, being uncertain,
and will also result in substantial loss of good will and
prestige built up through twenty years of effort, fair deal-
ing and advertising.   That the appellant's loss, injury, and
damage done it by reason of the appellee's violation, in the
present and future, of his covenant, both to do certain things
and not to do certain other things, are continuing, perpetual
and permanent, and work great injury to the appellant, its
business, welfare and good will.   That the wrongs, damages
and injuries, brought about as aforesaid by the appellee upon
the appellant, are not susceptible of adequate compensation
in the ordinary course of law, but will cause irreparable
damage to the appellant unless the said appellee is re-
strained therefrom.

The prayers are, that the appellee, his agents, servants
and employees, may be restrained and enjoined from hand-
ling for his requirements in the business of his drugstore
at Dundalk, Baltimore County, Maryland, until after the
18th day of August, 1928, or so long as said agreement of
August 18th, 1925, shall be in force or of legal effect, any
ice cream or other frozen commodities such as the appellant
makes, other than ice cream, sherbet, or frozen commodities
furnished and sold by the appellant; that he be likewise
enjoined from handling any of the products or equipment
of any ice cream manufacturer, other than such goods of
the appellant, while such contract is in force and effect, and
from advertising or permitting any advertising matter of

any manufacturer other than the appellant, in, around, or about his drugstore at Dundalk; and for further relief.

By the first paragraph of the agreement the appellant leased to the appellee for the term of three years from August 18th, 1925, and agreed to install at its expense, mechanical refrigerating equipment for preserving ice cream; and the appellee, in consideration of this being done, agreed to buy and use exclusively and to the extent of his requirements, during the said term of three years, ice cream, sherbets and other frozen commodities made by appellant at its established wholesale prices as adopted by it from time to time. By paragraph two the appellee agreed, in consideration of the premises, to use the equipment carefully and keep same in good order and condition, to supply the water and electric current required for the operation of the equipment, to deal exclusively in the ice cream and other products of the appellant, and not to handle, advertise, or permit any advertising matter, products or equipment of any other company or manufacturer in, around, or about the said premises during the term of this lease; and to use said equipment solely and exclusively for ice cream and other products manufactured and sold by the appellant. These constitute the important provisions of the agreement, upon the construction of which our decision must turn.

The appellee's principal contention is that the contract here is void for want of mutuality; and this apparently is the ground upon which the lower court rested its decision. This lack of mutuality is sought to be found in the fact that, while the appellee agreed to purchase all of the frozen products of the appellant which were used in the business of the appellee at Dundalk during the period of three years from the date of the agreement, nevertheless the appellant did not agree to sell and furnish the same. A literal reading of the contract shows this to be the case; but this contract, like all others, must be construed with the paramount purpose in view of arriving at the intention of the parties. Laying aside the question of intention for the moment, and considering the

wording of the contract, we find the contract signed by the appellant as a corporation, and by the appellee under seal, by which the appellant agrees to install on the premises of the appellee a refrigerating plant, at no cost to the appellee for the installation, and to allow same to remain for the period of three years from the date of the agreement; that it is expressly stipulated, in consideration of the above, that the appellee agrees to buy and use exclusively, and to the extent of his requirements during said term, all of the frozen commodities made by the appellant, at its established wholesale prices as adopted by it from time to time; and further, in consideration of the premises, the appellee agrees to refrain from buying, using, or permitting the use of, at his place of business during the period of three years, similar frozen commodities of any other individual or corporation, and that he will not advertise or permit the advertisement, in and around his premises, of any such commodities other than those of the appellant.

To hold that this contract is void for lack of mutuality, we must find that the party sought to be held is bound to do or refrain from doing something, while the other party to the contract is not bound to do anything; or in other words, we must find that there was no consideration received by the appellee in return for the things which he agreed to do and not to do. We are unable to so find, from this agreement. It is clear that the consideration was the installation by the appellant of the refrigerating apparatus upon the premises of the appellee, and agreeing that it should remain there for the period of three years, without any rent or cost of installation being paid to the appellant. The question of whether or not this consideration was adequate, is not one for this Court. The question of whether the appellee would receive an equal benefit by reason of the installation of the machine, as the appellant would receive by reason of what the appellee agreed to do for its benefit, was a matter which the parties considered at the time of the making of the agreement.

In *Guerand v. Dandelet,* 32 Md. 568, it was said: "Whether

the consideration for the restraint is adequate or not, is a question that the court will not inquire into. It is sufficient that the contract shows on its face a legal and valuable consideration; but whether adequate or inadequate to the restraint imposed, must be determined by the parties themselves, upon their own view of all the circumstances attending the particular transaction. If it were otherwise, it would be the court and not the parties, that would make the contract. All that the court is required to do, in passing upon the validity of the covenant, is to determine whether the restraint is reasonable and consistent with law, and whether there be a legal consideration to support it. This is now the established doctrine." To the same effect it was said in *McShane v. Hazelhurst,* 50 Md. 151: "We do not enter into any inquiry as to the relative value of the properties, which formed the subject of exchange. There is a good deal of testimony on this subject, much of it conflicting. This is a question with which we have nothing to do, the appellee cannot be relieved from his contract, merely because he may have made a bad bargain." To like effect see *Gluck v. Baltimore,* 81 Md. 325; *Taylor v. Turley,* 33 Md. 500; and *Brewer v. Sowers,* 118 Md. 687, in which latter case the Court, speaking through Judge Boyd, said: "In the absence of fraud, or some inequitable advantage taken by one party over another, courts do not inquire into the adequacy of the consideration for a promise, but usually leave that to the parties, if it is something of value. As said in *Brantly on Contracts* (2nd Ed.), page 88: 'There may be a qualitative but not a quantitative analysis of consideration.' " In *Brewer v. Briscoe,* 42 Md. 154, this Court said: "It is an established principle, that any consideration, however small, will be sufficient, as a court of equity is willing to lay hold of any just ground to support an agreement." See also *Ziehm v. Steil Brewery Co.,* 131 Md. 582.

In addition, while the contract does not, in words, express that the appellant is bound to furnish to the appellee the articles which the appellee agreed to purchase during the

term specified, nevertheless, it is abundantly apparent that
the intention of the parties, gathered from the whole contract,
was that the appellant agreed to sell and furnish such articles
to the appellee.   The contract, in effect, is that the appellant
offered to install the refrigerating apparatus upon the appel-
lee's premises, and furnish him frozen commodities to the
extent of his requirements, which, when accepted by the
appellee by his agreeing to purchase such commodities and
to refrain from purchasing like commodities from others,
constituted a contract binding upon both parties, containing
the implied agreement of the appellant to furnish the com-
modities which the appellee agreed to buy.   At the very
least, the contract discloses that there was a proposal by the
appellant that the appellee purchase from it certain commodi-
ties, which proposal, when accepted by the appellee, carried
with it the implied obligation on the part of the appellant to
furnish the commodities.   In 6 *R. C. L.* 689, it is said:
"Frequently it happens that contracts on their face and by
their express terms appear to be obligatory on one party
only; but in such cases, if it be manifest that it was the
intention of the parties, and the consideration upon which
one party assumed an express obligation, that there should
be a corresponding and correlative obligation on the other
party, such corresponding and correlative obligation will be
implied."

In the case of *Wood v. Duff-Gordon,* 222 N. Y. 88, the
plaintiff was to have, for the term of one year, the exclusive
right to place defendant's endorsement on certain designs, in
return for which she was to have one-half of all the profits
and revenue derived from any contracts he might make.   The
point was there made that the plaintiff did not promise that
he would use reasonable efforts to place defendant's endorse-
ment and market her designs.   The court held that such a
promise was fairly to be implied; and that when the defend-
ant gave to the plaintiff an exclusive privilege for a period
of one year, during which time she could not place her own
endorsements, or market her own designs, except through the

agency of the plaintiff, the acceptance of such an exclusive agency carried with it an assumption of its duties. In *Ziehm v. Steil Brewery Co., supra,* this court said: "The general rule, which has been adopted in this and other states, is to the effect that an accepted offer to furnish or deliver such articles of personal property as shall be needed, required or consumed by the established business of the acceptor, during a limited time, is binding and may be enforced, because it contains an implied agreement of the acceptor to purchase all articles that shall be required in conducting his business during the time named from the party who makes the offer. *Wells v. Alexandre,* 15 L. R. A. 218; *Minn. Lumber Co. v. While Breast Coal Co.,* 31 L. R. A. 529."

Without attempting to cite or analyze the many cases to be found on this subject, we are of the opinion that the case at bar is concluded by *Ziehm v. Steil Brewery Co., supra,* not only because the principles there enunciated are in accord with the weight of authority, and are substantiated by what appears to us the better reason, but because the facts in that case are strikingly similar to the case before us. There, Ziehm desired to go into the saloon business, and not having sufficient capital, he requested the officers of the brewing company to assist him in the undertaking. This was done, and the purchase of a saloon property was consummated, the purchase price of the property being $2,350. Ziehm had only $400, and Steil, the president of the brewing company, advanced sufficient money to pay for the saloon, with the exception of $1,560, for which amount a loan was sought from the building association. The building association considered that the saloon property, offered as security, was insufficient; and Steil, in order to induce them to make the loan, guaranteed its payment; whereupon, in consideration of this being done, Ziehm agreed to sell the beer of the Steil Brewery Company at the saloon so purchased, for the period of ten years, and not to sell the beer of any other brewery during that period. The property had been conveyed to the brewing company, and was to be reconveyed to Ziehm at the expira-

tion of the ten-year period.   After the expiration of four
years of the term, the personal indebtedness from Ziehm to
Steil having been settled, as also the mortgage to the build-
ing association, Ziehm filed a bill in the Circuit Court for
Baltimore City, in which he prayed that the agreement be
declared null and void, that the deed from Ziehm and wife
to the brewing company be declared void, that the brewing
company be required to convey to him the property in ques-
tion, and that an injunction issue restraining the brewing
company from conveying or in any manner dealing with the
title to the property as their own.   The lower court dismissed
the bill, and upon appeal this Court affirmed its action, hold-
ing that the guarantee by the brewing company of the pay-
ment of the mortgage to the building association was a good
consideration to support the agreement by Ziehm that he
would purchase all of the beer needed for his requirements,
during the period of ten years, from the brewing company at
market prices, and that he would not purchase beer from
others.   It will be seen that the questions decided in that
case are practically the same as those upon which a decision
is sought here.   We are of the opinion that the agreement to
install the refrigerating apparatus, and the actual installment
of it, by the appellant here, is a good consideration, and suffi-
cient to bind the appellee to the performance of his covenants,
both affirmative and negative, as contained in the agreement
of August 18th, 1925; that in addition to this express consid-
eration, there is contained in the agreement the binding im-
plied promise on the part of the appellant that it will furnish
the commodities mentioned in the agreement during the
period therein stipulated; which implied promise the appel-
lant, by its bill of complaint, tenders itself as ready, willing
and able to perform.

The only remaining question is whether the contract, being
valid, is enforceable in a court of equity.   Of this we have no
doubt.   The damages which might be sought to be recovered
in a court of law would be practically impossible of ascer-
tainment, because of the difficulty of determining in advance

the quantity of the commodities which will be used, and, further, the impossibility of determining in sums of money the damage which would result to the appellant by losing the advertisement of its own goods and having that of a competitor's substituted at the appellee's place of business.

Finding error in that part of the court's order which sustained the defendant's demurrer to the plaintiff's bill, the order must be reversed.

> *Order reversed, and case remanded for further*
> *proceedings, with costs to the appellant.*