FUCHS, APPELLANT, *v.* THE UNITED MOTOR STAGE CO., INC., APPELLEE.

(Decided December 1, 1938.)

Mr. *Stanley J. Crew* and Mr. *John A. Allen,* for appellant.
Mr. *Clarence J. Crossland,* for appellee.

SHERICK, J. This is a suit in equity to enforce by mandatory injunction the breach of a negative covenant in a requirement contract. A demurrer was interposed to the plaintiff's complaint. The demurrer having been sustained, the petition was dismissed and final judgment entered. It is from this order that plaintiff appeals to this court on a question of law.

A copy of the contract sued upon is not made a part of the petition, but it is therein pleaded in substance that plaintiff is the owner and operator of a service station, and defendant corporation owns and operates a fleet of automobile busses in southeastern Ohio.

On September 20, 1930, plaintiff paid defendant $7500 and received of it 15 shares of its capital stock and a duly-executed contract in writing wherein ''defendant agreed to buy all gasoline, oil and grease used in the busses operated by the company, at a price of three cents (3¢) a gallon less than the regular retail price of the gasoline sold'' by Fuchs, and ''said agreement also provided that the same shall continue in full force and effect as long as said plaintiff is the owner of the above-mentioned stock.''

It is further averred that he completed a terminal service station shortly thereafter in accordance with the agreement's terms, and equipped it so as to render efficient service, and has rendered such service up to July of 1937, when defendant without just legal cause refused to further abide by its contract and has since refused to purchase of him the three commodities contracted for. He says he has always been and is now ready, able and willing to continue such service at the contract price, but that since said last-named date defendant has purchased its requirements for operation from others unknown to plaintiff. It is recited that he has continued to own and does now own the fifteen shares of stock.

The plaintiff further pleads the loss of future profits

to him, by reason of the contract's breach, and the uncertainty of any period's requirement because of traffic fluctuation, number of busses in use, weather conditions and other factors. It is averred that he will suffer irreparable injury and damage for which he can not be adequately compensated in a simple action at law, but only compensated by a multiplicity of actions. It is prayed that defendant "be restrained and enjoined from buying or obtaining its requirement from any other than plaintiff so long as the agreement is in force or of legal effect."

The defendant attacks the sufficiency of the petition from three angles. The contract is said to be "void and unenforceable because of uncertainty," and for "lack of mutuality," and defendant contends that "plaintiff's remedy, if any, is by an action at law for damages." We shall now proceed to examine these claims.

Are the terms of the contract as pleaded uncertain? In one respect we must answer the query in the affirmative, for the parties deliberately contracted for an uncertain term; not for a designated period of time, but for so long as the plaintiff should own the fifteen shares of stock. Perhaps urgent need of $7500 additional working capital in 1930 prompted the bus company's liberality in granting plaintiff the right to terminate the agreement by non-ownership of its stock, but, whatever be the true reason therefor, the fact is the parties deliberately so covenanted. We know of no equitable or legal reason why any court should re-write the contract for the parties so as to make its end certain, where it was purposely left uncertain. Its duration, however, is susceptible of being made certain upon plaintiff's election.

Is the agreement in any way indefinite? This question must be likewise answered in respect to the quantity of the company's requirements in any given

period. It is not urged, nor can it be successfully contended, that requirement contracts are without legal and equitable sanction. It is equally definite that if the quantity is uncertain or indefinite at the commencement of a period, such feature of the contract, by performance, will become fixed, definite and certain at the period's end. The fact that extrinsic evidence is needed to supply such a deficiency does not vary the contract's terms, but simply makes definite the quantity which the parties could not anticipate. We therefore conclude "that is certain which can be made certain," for to otherwise hold is to countenance a positive injustice. This apothegm is found invoked in an action at law upon a like contract in *Manhattan Oil Co.* v. *Richardson Lubricating Co.,* 113 F., 923, in which it is said on page 924:

"It is quite immaterial that the quantity of oil to be sold and bought was not definitely determined at the date of the contract, but was to be ascertained by extrinsic evidence. The contract is quite analogous to that which was considered in *Wells* v. *Alexandre,* 130 N. Y., 642, 29 N. E., 142, 15 L. R. A., 218. * * * and, although the quantity to be furnished was not otherwise designated, the court declared that, notwithstanding the quantity was indefinite at the time of the contract, it was nevertheless determinable by the terms of the contract, and therefore certain, within the maxim, '*certum est quod certum reddi potest.*'"

Does the contract lack mutuality? We first observe that perhaps the majority of jurisdictions now holds a requirement contract to be enforceable and not lacking in mutuality where there is a promise on the one side to sell and upon the other to purchase all of a commodity that may be required. The mutual promises are held to create and fully support a valid and binding contract. See the note appearing and authorities listed in 98 A. L. R., 421. But we are admonished

that Ohio cleaves to the adverse rule that mutuality must exist in a contract, both of obligation and of remedy, before such contract can be made the basis of a suit for specific performance, as is found adopted in *Steinau* v. *Gas Co.*, 48 Ohio St., 324, 27 N. E., 545, which is recently approved in *Bretz* v. *Union Central Life Ins. Co.*, 134 Ohio St., 171, 16 N. E. (2d), 272.

In the present suit however, it must be remembered the stock purchase was an inducement to and a covenant of the requirement agreement. The $7500 expended was in part, at least, a past or executed consideration for future business. When the *Steinau case, supra,* is analyzed, we find this comment made on page 330 thereof:

"No past consideration appears. The obligations of each party are wholly in covenant, and are wholly executory. In other words, they are promises merely."

Clearly, this is not the situation now before this court, but rather such as is encountered in the case of *Christ Diehl Brewing Co.* v. *Konst,* 20 C. D., 782, 12 C. C. (N. S.), 577, affirmed without opinion in 79 Ohio St., 469, 87 N. E., 1137, wherein the brewing company furnished an independent consideration in the room and bar fixtures furnished Konst in and by the use of which he did business. In the present controversy we find more than mutual promises. We find possession and use of the $7500 in the appellee. Can it be said this sum was only intended as consideration for stock purchased? 1 Page on Contracts (1 Ed.), 450 and 451, Section 302, makes proper answer thereto in the statement of the generally accepted rule:

"Neither is it necessary that each covenant on the one part have a corresponding obligation on the other, apportioned to that particular covenant, since one consideration can support several promises."

In *Tennant* v. *Wilde,* 98 Cal. App., 437, 277 P., 137, it was held that where there was consideration for

any of the agreements specified in a contract, the contract as a whole could not be said to lack mutuality or consideration, nor could any particular promise or agreement contained therein be singled out and termed inoperative because no special consideration appeared to have been given or promised for it.

Fuchs expended $7500 not only for the stock of the appellee, but for the promotion of his business in securing a profitable long time customer, a back log for his business.

Assuming for the moment that the plaintiff does not possess an adequate remedy at law, we turn to 5 Pomeroy's Equity Jurisprudence (4 Ed.), 4937 and 4938, Section 2197. The author discourses on contracts terminable at the will of one party. He next proceeds to consider indirect enforcement by enjoining the breach of defendant's negative covenant. The author states:

"A similar objection, for lack of mutuality, is urged to the indirect enforcement of a contract by an injunction against the violation of a negative clause of the defendant's agreement, where neither the defendant nor the plaintiff could have specific performance of the affirmative side of the agreement, as in the case where defendant agrees to sing in plaintiff's theater, and in no other place. But the answer of equity is a *conditional* decree—an injunction which is good so long as plaintiff continues to do his part, but dissolvable upon his failure to perform [or to own appellee's stock]. While a clear lack of mutuality exists in the terms of the agreement [as is not the case before this court], inasmuch as one of the terms is unenforceable in equity, yet the final test shows that the remedy of a conditional decree does not leave the defendant to a legal remedy, as plaintiff must give performance so long as he receives it."

Continuing to indulge the assumption, and at the

risk of a proper charge of verbosity, we quote with approval from 14 Ruling Case Law, 381, Section 82:

"A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to a true and literal performance of their agreements, and will not suffer them to depart from their contracts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, enjoin the breach of a contract, notwithstanding the fact that the nature of the contract may be such that specific performance could not be enforced. Accordingly, the breach of a negative covenant in a contract may be enjoined."

It is the further notion of this court that *Hendler Creamery Co.* v. *Lillich,* 152 Md., 190, 136 A., 631, is a similitude to this suit, save on the matter of duration. Its reasoning may be pursued with profit. Appellee strenuously urges *DuPont de Nemours & Co.* v. *Claiborne-Reno Co.,* 64 F. (2d), 224, 89 A. L. R., 238, upon us. On page 229, the court makes this pertinent observation, which destroys its efficacy in its consideration of a "want of mutuality":

"But this rule does not apply when there is a valuable consideration paid by the one party to the other party who obligates himself to do a certain thing."

Has the appellant an adequate and all-sufficient remedy at law? We think not. If the duration of the contract was fixed and certain, perhaps one action at law might suffice under the rule of damages suggested in the *Steinau case, supra,* that is, measured by the requirements of former years. But the present contract is not analogous to the Steinau agreement. It was to run for a definite period. Fuch's contract might run one year or ten or until his death. If he were put to an action at law, how many years' damage might he sue for? Surely no more nor no less

than the actual legal duration of the contract. The extent thereof is not now determinable. Fairness and justice should accord him periodic actions when requirements have been made certain by lapse of time. This would of course entail a multiplicity of actions at law. *Renner Brewing Co.* v. *Rolland,* 96 Ohio St., 432, 118 N. E., 118, recognizes that a multiplicity of actions is indicative of an inadequacy of legal remedy, which fact of itself should, and in this case does, warrant the invocation of an equitable remedy.

The judgment of the trial court in sustaining the demurrer to plaintiff's petition is reversed and the cause is remanded for further proceedings.

*Judgment reversed and cause remanded.*

MONTGOMERY, P. J., and LEMERT, J., concur.