## HENRY TRIEBERT *vs.* JOHN BURGESS and others, and JOHN BURGESS and others *vs.* HENRY TRIEBERT.

An affidavit to a bill for an injunction, "that the facts stated in the bill *are true to the best of his* (complainant's) *knowledge and belief,*" is sufficient.

Unless the *necessity* be of the most stringent character, the court will not appoint a *receiver* until the *defendant is first heard* in response to the application.

An order directing to be delivered to the receiver "the goods, wares, and merchandise, and effects" of the defendant, when his agreement, as stated in the *bill,* was, that he would give a mortgage "of all *his stock in trade* in the city of Baltimore," is erroneous, because *too comprehensive.*

The provisions of the insolvent act of 1854, ch. 193, which make void judgments, decrees, conveyances and assignments, for fraud, or for gaining undue preferences, relate only to cases of insolvency in which there have been *petitions* for the benefit of that act.

When no particular *time* for payment is limited in a mortgage, it is to be paid in a *reasonable time,* and if the payment is not so made, the mortgagee is entitled to a foreclosure.

A *parol* contract for a mortgage of *personal property,* based upon a valuable consideration, may be enforced in a court of equity, if the contract is not such as the statute of frauds requires to be in writing.

In such a case a creditor, to secure whose claim the contract was made, has an *equitable lien* upon the property agreed to be mortgaged, and there being no reasonable ground to believe he could secure payment of his claim except by enforcing this lien, he is entitled to an *injunction* to restrain the debtor from disposing of the property.

APPEAL from the Circuit Court for Baltimore city.

In this case, Triebert, the defendant below, appealed from an order granting an injunction and appointing a receiver, upon a bill filed against him by Burgess and others, and the latter, the complainants below, appealed from an order directing the receiver to deliver to the defendant all the property taken from him by virtue of the receiver's appointment, passed on motion of the defendant, after he had filed an appeal bond upon his appeal from the previous order.

The bill filed by Burgess and others, partners, under the firm of Burgess, Dale & Goddard, on the 10th of November

1857, alleges, that upon the application of Triebert, who is, and for some time has been, engaged in the business of buying and selling china, glass and queensware in Baltimore, the complainants, who are importers of such goods in New York, sold and delivered to him, from time to time, large quantities of goods, of which an account is filed as an exhibit with the bill; that on the 29th of September 1857, a considerable amount, though not the whole, being then due for the goods, and the complainants pressing for payment, and Triebert, not having or possessing the necessary means then in his hands, proposed to complainants to give them a bill of sale of all his stock in trade in Baltimore, to secure them, by way of mortgage, as well his matured as his maturing indebtedness, and also the further sum of $900, to be lent and advanced him by them, provided they would lend and advance him $900 in cash, which proposition complainants agreed to and accepted, and on that day paid to Triebert the stipulated sum of $900, in consideration of which he had promised to give them his bill of sale, by way of mortgage, of his stock in trade, and was bound by it; that the greater part of the indebtedness of Triebert to them, for his purchases as well as this $900, is due, with the exception of $200 paid them; that they have applied to him to execute the mortgage he had stipulated to make, but he has neglected and refused to do so.

The bill further charges, that the stock in trade of Triebert, consisting of china, glass and queensware, in the store occupied by him, on Baltimore street, is the same (except where he may have sold part) which was held by him at the time of his aforesaid promise, and which he then undertook to convey to complainants as security; that he not only refuses to perform his undertaking, but is selling the stock and receiving the proceeds, which he is applying to his own use, and fails to pay over to complainants, and is thereby daily diminishing their security; that he is greatly embarrassed in his circumstances, at this time, and has created one or more liens, in favor of one or more of his creditors, on other property belonging to him, being thereto pressed and unable otherwise to satisfy the demand made on him, and they apprehend and charge there is

great danger that Triebert will dispose of the whole of his said stock in trade, or give liens thereon, to persons unaware of their claims and equitable lien in the premises, and so put said stock in trade, and the proceeds thereof, beyond their reach. And they further charge, that if liens are so created in favor of other persons on said stock, or the same shall be sold by Triebert, and the proceeds pass into his hands, there is great danger that they will not only lose their promised security, which is now ample for their debt, but also their debt itself, it being the belief of the complainants, which they hereby charge, that Triebert is largely indebted beyond his means of payment; that they are advised they have, under the circumstances above stated, an equitable lien on said stock in trade, and as the whole indebtedness which it was meant to secure, has now matured, they are entitled to a sale of the same, under a decree, for the satisfaction of their debt, and, in the mean time, to the protection of the court, through the medium of a receiver, against what they charge to be, on the part of Triebert, not only a fraudulent denial of the security promised them, but also a fraudulent misappropriation, to their irreparable injury, of the property agreed to be mortgaged to them.

The bill then prays for a decree that the complainants may have and hold the said stock in trade as security for the indebtedness of Triebert, in manner and form as promised, and for a sale thereof, and also for an injunction restraining Triebert from selling or disposing of the same, and for a receiver to take charge of said stock in trade, and hold the same subject to the order of the court, and for general relief.

The affidavit to this bill is stated in the opinion of this court. On the same day on which it was filed, the court (KREBS, J.) passed the order from which the *defendant appealed,* and, on the next day, that from which the *complainants appealed.* Both these orders are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

Triebert vs. Burgess, et al.

*George William Brown* for the defendant below, argued:

1st. That even if the allegations of the bill were clearly *proved,* an injunction should not have been granted, because the bill substantially alleges that the defendant was *insolvent,* and if so, he had no reasonable expectation of being exempted from liability or execution on account of his debts, without petitioning for the benefit of the insolvent laws.  The complainants had full *knowledge* of his *insolvency,* and the contract sought to be enforced by them, was an attempt to obtain an undue and improper preference, and, to enforce it, would be in violation of the policy of our *insolvent system, (Act of* 1854, *ch.* 193, *secs.* 6, 7, 8, 10,) and if the insolvent laws do not apply to the case, still the court would not enforce such a contract in such a case, because it would be contrary to the doctrine of equity that *equality* is the highest equity.

2nd.  The contract is too *indefinite* to be specifically enforced. It is of the essence of a contract of mortgage that *time* should be agreed upon.  What was the *time* to be given for the repayment of the $900 advanced?  None was agreed upon, and the court cannot undertake to fix it.  Nor does it appear whether there was any contract as to the *custody* of the property until the mortgage debt matured.  At the time the bill was filed, a large portion of this debt was not due.  The contract was *uncertain* in this particular, and yet the court, by seizing the entire property of the defendant arbitrarily and without any proof, undertake to fix it.  This it certainly could not do.

3rd.  A mere *parol* agreement for a mortgage of *personal property,* gives no *title* in equity, and where a party is simply a general creditor, and has not prosecuted his claim to judgment and execution, nor acquired a lien on the debtor's property, he is not entitled to an injunction.  The decision in *Uhl vs. Dillon,* 10 *Md. Rep.,* 503, governs this case, for the complainants have acquired no lien, and only set up an equitable claim to a lien, which is not proved nor admitted.

4th.  The *affidavit* made to the bill, by Burgess, one of the complainants, is, that the facts "stated in the bill are true *to the best of his knowledge and belief.*"  But he does not profess

to have any *personal knowledge* of the facts, nor does he show how his knowledge and belief are derived. His knowledge and belief may have been derived from the report of others, for the bill does not charge that the alleged contract was made with *him*, or that any of the business was transacted by *him*. If so derived, he might not be liable to an indictment for perjury, even if the allegations were all false. Such an affidavit is unsufficient evidence to sustain an order for an injunction. 4 *Price*, 346, *Scott vs. Becher.* 1 *Bland,* 422, *Williamson vs. Wilson.* 6 *Ves.,* 786, *Davis vs. Leo.* 1 *Barb. Ch. Pr.,* 44. 2 *Barb. Ch. Pr.,* 361.

5th. The order appointing a *receiver,* was clearly wrong. He was appointed before answer, without motion, and before notice to the defendant. This is in violation of the general rule, and can only be done in a ease of pressing necessity, and on clear proof to meet the exigency of a special case, and no such necessity existed here. Again, a receiver will not be appointed where a defendant, as in this case, is in possession under a legal title. This rule is only departed from in cases of fraud clearly proved, and of imminent danger to the property, and strong ground of title in the claimant. *(Note.—* This case was *argued* before the case of *Blondheim, et al., vs. Moore, ante* 365, was *decided,* and the authorities cited upon this point, being the same as those in that case, need not be here repeated.)* But there are other objections to this order. The bill asks only for the appointment of a receiver of the *stock in trade* of the defendant, in pursuance of an alleged contract, but the order went *far beyond this,* and directed the receiver to take possession of *all* the goods, wares, merchandise, and *effects* of, or belonging to, the defendant. This is clearly wrong. It dispossessed the defendant of every species of property, even more completely than if he had applied for the benefit of the insolvent laws. *Act of* 1854, *ch.* 193, *sec.* 1. Again, the receiver appointed was a *solicitor* of the complainants, and for this reason the order was improper. *Edwards on Receivers,* 54, 66. 11 *Paige,* 200, *Warren vs. Sprague.* 1 *Hogan,* 322, *Wilson vs. Poe.* 2 *Ves., Jr.,* 137, *Garland vs. Garland.* 2 *Merivale,* 452, *Ex-parte Pincke.* *(Note.—*As

to this last objection, the *court* stopped the counsel on the other side, saying the appointment of the *solicitor* as receiver was no cause for reversal of the order.)

As to the *appeal by the complainants*, it is insisted, 1st, that the order of the court on the receiver, to deliver over the property *after the appeal bond* was filed by Triebert, is not one from which an appeal can be taken; and 2nd, that the filing of the appeal bond rendered such an order necessary.

*Jas. Malcolm* and *J. Mason Campbell* for the complainants below, argued:

1st. The case, on this appeal, coming before the court upon the bill alone, (10 *Md. Rep.*, 429, *McCann vs. Taylor*,) it is insisted that equity has jurisdiction, and will enforce a *parol* contract to give a security upon personal property. This is conclusively settled, so far as the law of this State is concerned, by the case of *Alexander vs. Ghiselin*, 5 *Gill*, 138. See, also, 4 *Kent.*, 140. *Miller on Equitable Mortgages*, 16, 28. 2 *Sch. & Lef.*, 382, *Card vs. Jaffray*. 1 *Cox*, 211, *Beckett vs. Cordley*. 2 *Atk.*, 347, *Matthews vs. Cartwright*. 9 *How.*, 390, *Tayloe vs. Merchants Fire Ins. Co*. 19 *Eng. Law & Eq. Rep.*, 57, *Bell vs. Carter*. 2 *Amer. Law Reg.*, 20, *Wright vs. Shumway*.

2nd. There is no validity in the several special objections urged against this *bill*, and the *contract* set out in it. 1st. To enforce this contract would be no violation of the policy of our *insolvent system*. The contracts and conveyances which the act of 1854, ch. 193, annuls, are those which are made in cases of *technical insolvency*, where the parties *petition* for the benefit of the insolvent laws, and no such insolvency is shown in this case. 4 *Gill*, 38, *Wheeler vs. Stone*. 9 *Gill*, 231, *Powles vs. Dilley*. And, besides, the case of *Alexander vs. Ghiselin* shows that a parol agreement to execute a mortgage will be enforced in equity, notwithstanding even a technical insolvency. 2nd. That no *time* was fixed for the payment of the mortgage debt, and of *redemption* is immaterial. The loan of the $900 was payable *on demand*, and the mortgage accommodates itself to the *debt;* no time need be mentioned.

Again, when the *decree* is passed under the act of 1785, ch. 72, the time for payment can be regulated at the *discretion* of the court. See, also, *Miller on Equitable Mortgages,* 16, 27. 3rd. Nor is there any force in the objection to the sufficiency of the *affidavit* to the bill. The *form* is that in which such *affidavits* have *always* been made in this State. When a party swears that the *facts* stated in his bill are true to the *best* of his *knowledge* and *belief,* he swears that to his *best knowledge* they *are true,* and if any of the facts are within his *personal knowledge,* this *affidavit* subjects him to *perjury* if they are found to be false; and if a man swears he *believes* that to be true which he *knows* to be *false,* it is perjury.

3rd. That such a contract having been made in this case, upon a *valuable consideration* paid therefor by the complainants, the defendant was, as to the complainants, *a trustee* of the property embraced by such a contract, *(Hunt vs. Rousmaniere,* 1 *Pet.,* 17,) and that his fraud, coupled with imminent danger of irreparable loss, rendered an injunction and receiver the only available means to save the property pending the litigation. 1 *Ves. & Bea.,* 183, *Metcalfe vs. Pulvertoft.* 13 *Ves.,* 105, *Hugonin vs. Basely.* 16 *Ves.,* 70, *Lloyd vs. Passingham.* 1 *Md. Ch. Dec.,* 70, *Clark vs. Ridgely.* Ibid, 489, *Thompson vs. Diffenderfer.* 2 *Md. Ch. Dec.* 157, *Dorsey vs. Roberts.* 12 *Ves.,* 5, *Anonymous.* 31 *Eng. Law & Eq. Rep.,* 436. 3 *Younge & Coll.,* 379. The order sufficiently follows the bill; the word *"effects"* adds nothing to the meaning of the previous words, and, besides, the defendant was not bound to deliver any thing which the receiver had no authority to receive.

As to the *appeal* of the *complainants,* it is insisted that the order appealed from is erroneous. The act of 1853, ch. 374, only stayed *the operation* of the order from the time of bond given, and gives no retrospective effect *to the* bond or appeal. The court might have directed the receiver to proceed no further, but it could not undo what had been done; it might stay the further operation of the order, but could not treat it as rescinded by the appeal. 2 *H. & J.,* 7, *Beatty vs. Chapline.*

ECCLESTON, J., delivered the opinion of this court.

The bill and exhibits being filed, the court passed an order appointing a receiver, with authority, on his giving bond, to take charge and possession of the goods, wares, merchandise and effects of the defendant, and directing him to surrender the same to the receiver. The order also granted an injunction according to the prayer of the bill, upon a bond being filed by the complainants, but reserving liberty to the defendant to move for the rescinding of the order, and for a dissolution of the injunction, at any time after filing his answer, on giving the complainants five days' previous notice of such motion.

This order is dated the 10th of November 1857, on which day the injunction issued, after the bond of the complainants and that of the receiver were filed.

On the following day the defendant filed his answer, entered an appeal from the order granting an injunction and appointing a receiver, and filed his appeal bond.

Afterwards, but on the same day, upon motion by the defendant, the court passed an order directing the receiver to deliver to the defendant all the property taken from him by virtue of the receiver's appointment. From which order the complainants appealed.

On the first appeal the solicitors of Triebert contend, that, admitting the allegations of the bill may be sufficient to entitle the complainants to the relief they ask, if the bill had been properly proved, or sworn to, still the order appealed from should not have been passed, because the affidavit of the complainant is defective, in not stating positively his knowledge of the truth of the matters alleged, the oath being, "that the facts stated in the bill are true, to the best of his knowledge and belief."

In *Coale vs. Chase*, 1 *Bland*, 137, the *form* of an affidavit to the answer was objected to, as being too vague, indefinite and general. The affidavit was, "that the several matters and facts set forth in the within and aforegoing answer are just and true as they are therein stated, according to the best of her knowledge, belief, and recollection." The chancellor ad-

mitted that, regularly, the affidavit in such cases should assert, "that the facts within the defendant's own knowledge are true, and that those facts not within his own knowledge he believes to be true." But because, in Maryland, there had been, as far back as his observation extended, a very great neglect of all regularity in the forms of such affidavits, the chancellor did not feel authorized to depart from even so improper a practice as to require more than a substantial sufficiency in such affidavits. He thought them sufficiently absolute and positive, if, when taken in connection with the body of the answer, the party would be subject to a prosecution for perjury, in case the matters stated in the answer should be false. He held it to be well settled, that if a man swears he *believes* that to be true which he knows to be false, he swears as absolutely and is as criminal as if he had made a positive assertion; and may be prosecuted and punished for perjury. And although the chancellor did not think the affidavit so correctly expressed as it ought to have been, still, when taken in connection with the whole answer, he deemed it substantially sufficient; because if any of the allegations of the answer were false, the defendant would be as clearly liable to a prosecution for perjury as if the affidavit had been couched in the most positive terms. Upon which answer, thus sworn to, the injunction previously granted was dissolved.

At one time it was held, in England, that a man who swore to his *belief* could not be prosecuted for perjury; but this has been overruled by more recent authorities, which sustain the doctrine stated by Chancellor Bland.

In 3 *Waterman's Archb. Crim. Prac. & Plead.*, 596, it appears, that in the Common Pleas, in 1780, Lord Loughborough and other judges "were unanimous that belief was to be considered as an absolute term, and that an indictment might be supported upon it." See, also, *Commonwealth vs. Warden*, 11 *Metcalf*, 406.

The matters set forth in the present bill, which could be supposed to be within the knowledge of the complainants, are not stated as believed by them upon information received from other sources than their own knowledge; but the allegations

in the bill are stated in the usual manner of averring facts as based upon the *knowledge* of the complainants. And, in view of the long established practice in this State, we cannot sustain the defendant's objection to the form of the affidavit. When the facts, as here stated, are sworn to by a party to be true, "according to the best of his knowledge and belief," he must be considered as making a sufficiently *positive* assertion that they are true.

Triebert, as appellant, objects to the order of the 10th of November, both as regards the granting of the injunction and the appointment of a receiver. The portion relative to the receiver will be first disposed of.

This will not require a very extended examination, because in the case of *Blondheim, et al., vs. Moore,* decided during the present term, *(ante 365,)* this court has very clearly enunciated such rules in relation to the appointment of receivers as must settle the case before us on this subject.

One of the rules alluded to is: "That unless the necessity be of the most stringent character, the court will not appoint until the defendant is first heard in response to the application." In that case the appointment of a receiver, without notice to the defendants having been given, was held to be erroneous.

According to the principles there established, there is no such imperious necessity as should justify the appointment of a receiver without notice, in the case before us; especially as the defendants were merchants, residing in the city of Baltimore, but a short distance from the court in which the order was passed. And this order was erroneous, because too comprehensive. It directed to be delivered to the receiver "the goods, wares, and merchandise, and effects," of the defendant, whereas his agreement, as stated in the bill, was, that he would give a mortgage "of all his stock in trade in the city of Baltimore."

In reference to the injunction, the defendant insists, that the bill does not present a case which entitles the complainants to a specific execution of the alleged agreement for a mortgage, and, therefore, the injunction should not have been granted.

Different grounds are urged against the complainants' right to have a mortgage. One is, that the complainants had knowledge of the defendant's insolvency, and the arrangement alleged by them, by which, on the advance of $900, they were to have a mortgage on the defendant's entire stock in trade, to secure the advance and the entire debt due, and to become due from him to them, was an attempt to obtain an undue and improper preference. And to grant the relief asked, would be in opposition to the policy of our insolvent law of 1854, ch. 193, secs. 6, 7, 8 and 10. In support of this view, it is said, that the bill alleges the defendant to be greatly embarrassed in his circumstances, that he had created one or more liens in favor of one or more of his creditors on other property belonging to him, being thereto pressed, and unable otherwise to satisfy the demand made on him; that the complainants apprehend and charge there is great danger that the defendant will dispose of his whole stock in trade, or give liens thereon, to persons unaware of the complainants' claims and equitable lien in the premises, and so put the said stock in trade, and the proceeds thereof, beyond the reach of the complainants; and they further allege, that if liens are so created in favor of other persons, on said stock, or the same shall be sold by the defendant, and the proceeds pass into his possession, there is great danger that they will not only lose their promised security, which is ample for their debt, but also their debt itself, it being the belief of the complainants that said defendant is largely indebted beyond his means of payment. It does not, however, appear that the defendant has ever become a petitioner for the benefit of the insolvent law; and we understand that he never was an insolvent petitioner.

It is manifest that the sections in the act of 1854, which have been referred to, relate only to cases of insolvency, in which there have been petitions for the benefit of that act. And in such cases, alone, does that law make void judgments, decrees, conveyances and assignments, for fraud or for giving undue preferences.

The 6th section declares, "That no person shall be released or discharged *under this act,* who has conveyed, concealed or disposed of his property to defraud," &c.

The 7th section is, "That any confession of judgment, and any conveyance or assignment, made by *any insolvent under this act*, for the purpose of defrauding his creditors, or giving an undue preference, shall be void, and the property or thing conveyed or assigned, shall *vest in the trustee*, and that all acts *done by a petitioner before his application*, when he shall have had no reasonable expectation of being exempted from liability or execution, on account of his debts or responsibilities, without petitioning for the benefit of the insolvent laws, shall be deemed to be within the meaning and purview of this section."

The 8th section provides, "That any judgment or decree confessed to give an undue preference to any creditor, or for the purpose of defrauding any creditor, shall be void, and *excluded in the distribution under this act*."

The 10th section enacts, "That the *estates of insolvents* shall be distributed under the orders of the court, according to the principles of equity, and no creditor shall acquire a lien by *fieri facias* or attachment, unless the same be levied before the *filing of the petition*." (The italics are ours.)

There having been no such insolvency shown as the act of 1854 contemplates, we are not prepared to say that its provisions can defeat the complainants' claim under the alleged contract for a mortgage. See, in *Kettlewell vs. Stewart, 8 Gill*, 501, a note of the opinion delivered by Chief Justice Taney, in the case of *White, Warner & Co., vs. Winn & Ross.*

The present is a case in which the debtor *himself* is resisting the complainants' right to relief, but which is not opposed by creditors of the defendant, or by a trustee for them.

Another objection to this contract is, that it cannot be specifically enforced, because it is too indefinite, inasmuch as no time is limited for payment of the mortgage; and as the parties have agreed upon none, the court cannot undertake to fix it. Such an objection is not a valid one. Very recently, in *Farrell vs. Bean,* 10 *Md. Rep.*, 233, this court has said: "When no particular time of payment is limited in a mort-

gage, it is to be paid in a reasonable time. And if the payment is not so made, the mortgagee is entitled to a foreclosure." Moreover, a mortgagor cannot seriously apprehend being oppressed by want of proper time to pay, under a final decree, as this matter is at the discretion of the judge, who will, of course, regulate the time for payment under the decree, according to the equitable circumstances brought before him.

That, in Maryland, a parol contract for a mortgage of personal property, based upon a valuable consideration, may be enforced in a court of equity, if the contract is not such as the statute of frauds requires to be in writing, has been fully established in *Alexander, et al., vs. Ghiselin, et al.,* 5 *Gill,* 138, and *Sullivan vs. Tuck,* 1 *Md. Ch. Dec.,* 59. According to the views of the chancellor, in the latter case, courts of equity do not specifically enforce contracts in respect to personal property, with the same facility and universality as contracts relating to real estate; the cause of which is, that in contracts of the first class, courts of law are generally competent to afford full redress. 2 *Story's Eq.,* sec. 717. But when, at law, a party cannot have a complete and satisfactory remedy, although the contract relates to personal estate, a court of equity will grant relief. *Ibid.,* sec. 718.

Under the circumstances set forth in this bill, there was, in our opinion, an equitable lien upon the defendant's stock in trade, which authorized the court to grant the injunction. According to the facts stated, there was no reasonable ground to believe that the complainants could secure payment of their claim, except by enforcing their equitable lien.

On this appeal the answer is not before us, and we can only look to the bill and exhibits.

That portion of the order of the 10th of November 1857, which appointed the receiver, will be reversed, but the portion of it which relates to the injunction, will be affirmed.

Inasmuch as the receiver was improperly appointed, the appeal of the complainants from the order of the 11th of November, cannot be sustained, for, in any view of the case, that order did them no injury.

The order appealed from by Triebert, is reversed in part, and affirmed in part; and the parties are to pay their own costs in this court.

*Order reversed in part, and affirmed in part, and cause remanded for further proceedings.*

Upon the appeal of *Burgess and others,* the same Judge delivered the opinion of this court:

From what has been said in the opinion delivered in the appeal of *Triebert vs. Burgess and others,* it will be seen that we think the order appealed from in this case ought to be affirmed. A decree accordingly will be signed, allowing costs in this court in favor of Triebert.

*Order affirmed.*