## PUBLIC INDUSTRIALS CORPORATION v. READING HARDWARE CO.

Circuit Court of Appeals, Third Circuit.
January 4, 1929.

No. 3835.

Frederick H. Wood, of New York City, and William Clarke Mason, of Philadelphia, Pa. (Bruce Bromley, of New York City, and Colin C. Ives, of Louisville, Ky., of counsel), for appellant.

Cyrus G. Derr and H. F. Kantner, both of Reading, Pa., and Owen J. Roberts, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. In a contract for the sale of its property by the Reading Hardware Company to the Public Industrials Corporation, plaintiff below and appellant here, for the sum of $3,900,000, $300,000 was deposited by the plaintiff with the Penn Trust Company of Reading, Pa., to be forfeited to the defendant as liquidated damages in case of plaintiff's breach of the contract, or to be credited on the purchase price if the contract was consummated. This amount was paid to the defendant on plaintiff's failure to close the contract on the dates stipulated for closing.

This suit was brought by plaintiff to recover said sum of $300,000 on the ground that defendant had breached the contract, and therefore that plaintiff was entitled to recover back the money. A verdict being

rendered for the defendant, judgment was entered thereon, from which judgment this appeal was taken.

All the material issues of fact were fairly submitted to the jury, and in the absence of error in the court's submission, the jury's verdict is conclusive. Nor do we find any difficulty on the questions of law involved.

 The contract of sale was clear in its terms, and the rights of the parties plainly defined. Time was definitely made of the essence of the contract, and the closing of the contract was in no event to be later than April 1, 1926. The facts, which are undisputed, together with the clear weight of the evidence on all controverted questions, show conclusively that the vendor was at all times ready, willing, and able to carry out its contract in good faith, while the purchaser was clearly resorting to subterfuge in its endeavor to extend the time of closing beyond the period designated in the contract. This was plainly due to its inability to finance the purchase.

The condition of the vendor's property as of the date of the contract, as shown by the balance sheets and the income statements, was as represented by the vendor, as well as the net current assets and cash on hand at the date of closing. Any failure to inventory the property, or any lack of a certificate from an appraisal company, was solely chargeable to the plaintiff, as they were its agents specially designated, and for their dereliction the defendant is in no sense answerable.

The verdict of the jury and the law applicable to the facts show that the defendant tendered a marketable title for the property. The five mortgages on portions of the vendor's property at Reading, Pa., the last being dated in 1869, had long since lost their lien through legal presumption of payment. Not only were the mortgages considered as a debt presumptively paid, but as a conveyance, assertion of title was barred by statute after the lapse of 21 years. If the purchaser desired a decree of court requiring the recorder to enter formal satisfaction of the mortgages on the record, this procedure had been satisfactorily arranged between the parties.

There was no valid incumbrance on the title of the Chicago property. The claimant was a mere trespasser. He was a former tenant, whose lease had expired, and who endeavored to hold possession solely under an alleged oral option to purchase the property given by the former owner. This was in the very teeth of the statute of frauds, and was in no sense enforceable. A suit against the claimant in forceable entry and detainer

had resulted in a judgment against him, which, on appeal pending at the time of settlement, was subsequently affirmed. No cause of action existed in fact, nor was any disclosed on the record. It follows as a matter of law that no valid reason existed for refusing the title.

 Equally without merit was the alleged misnomer of the defendant by the omission of the word "The" from the corporate title. Such word had been omitted in three of the deeds in which the company took title to the property. No question was, or could be, raised as to the identity of the defendant corporation. Plaintiff's attorney had made a search of the titles and had furnished the plaintiff with abstracts. The deeds prepared for use at closing were exact copies of those prepared by plaintiff's counsel in which the vendor was designated "Reading Hardware Company." They were executed and contained the seal of the corporation, which seal had on it the word "The" as a part of the corporate title. The record is clear that the vendor was willing to execute any deed the plaintiff desired. These facts would undoubtedly exonerate defendants from any blame, even if the deed, as tendered, was illegal. But as a matter of law the authorities clearly show that a deed or mortgage is valid although the corporate name as set forth is not correct. Thompson on Corporations lays down the rule as follows: "An immaterial misnomer, as the omission of one word in the corporate name, will not render an instrument invalid, where there was a proper authority to execute it." This is only a general statement of the well-established rule.

Briefly summarized—

(a) Plaintiff's demand for extension of time for closing was based on its own default in obtaining the verifications disclosed in the contract. These verifications being for the plaintiff's benefit, it was clearly their duty to obtain them.

(b) Time being of the essence of the contract, each party was bound to do within that period whatever was to be done for its own benefit. Failure in this regard by either party could not be asserted against the other.

(c) Whether or not the verifications were actually made was submitted as a question of fact for the jury, and no relevant evidence on that subject was excluded.

(d) Defendant tendered a conveyance of title, free and clear of all liens and incumbrances, as provided in the agreement. The marketability of the title was established by the finding of the jury.

The judgment should be affirmed.