ROCKLIN *v.* EANET ET AL.

[No. 193, October Term, 1951.]

352

*Decided June 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Robert E. Coughlan, Jr.*, with whom were *Thomas Reamer* and *Lord, Whip & Coughlan* on the brief, for the appellant.

*Edward Azrael* and *H. David Gann* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellant sued the appellees in an action at law for damages for breach of contract, and the appeal is from a judgment in favor of the defendants for costs, after the court, without filing an opinion, sustained a demurrer without leave to amend. The declaration alleged that the appellant on May 14, 1951 entered into a written agreement with the appellees to sell his grocery

and package liquor store business known as "Charles Market", including accounts receivable, for $15,000, at which time $1,500 was paid. The appellees completed and signed an application for transfer of the liquor license, but refused to file the same and repudiated the agreement. Thereupon the seller notified them of his willingness to comply and demanded performance by May 31, 1951. After due notice and diligent effort, he resold the business, through Aetna Realty Company, on June 27, 1951 for $8,000, not including accounts receivable approximating $1,100. The seller paid commissions to Aetna Realty Company and also to W. Burton Guy & Co., agents for the seller in the initial sale, and sustained other damages, beside the loss on resale. The seller was always ready, willing and able to perform the contract, but the defendants breached the agreement.

The contract, attached to the declaration, was drawn on the letter-head or form of Aetna Realty Company, and read as follows:

"That the said Seller does hereby bargain and sell unto the said Buyers, and the latter does hereby purchase from the former the following described property, situate and lying in the City of Baltimore, State of Maryland, and known as the Charles Market, located at 918-920 N. Charles Street, together with the Package Liquor License for Beer, Wines and Liquors (off sale) now located in said premises, together with all stock, fixtures, counters, and accounts receivable now located in said property, which includes the entire 1st floor mezzanine, and garage in rear, at a rental of $200.00 per month for three years, with an option of another five years, at and for the price of Fifteen Thousand Dollars ($15,000.00) of which Fifteen Hundred Dollars ($1,500.00) have been paid prior to the signing hereof, and the balance to be paid as follows: Eight-five Hundred Dollars ($8,500.00) shall be paid 5 days after the

approval, by the Board of Liquor License Commissioners of Baltimore City, of the transfer to the Buyers or their assigns, of the present Beer, Wines and Liquors License, now held by the Sellers, for said premises. The balance of Five Thousand Dollars ($5,000.00) to be secured by a Chattel Mortgage at the rate of 6% per annum, due and payable on or before 2 years. Possession of the described premises and of the fixtures, merchandise and equipment hereby sold shall be given to the Buyers on the date of the sale, at which time all moneys shall be held in escrow in a joint account of a seller and buyer until the date of settlement, at which time it shall be turned over to the Buyers. The herein described property is to be held at the risk of the Sellers until title has passed or possession given.

"It is specifically agreed and understood that if the Board of Liquor License Commissioners for Baltimore City shall fail or refuse to approve the transfer of or the granting to the said Buyers or their assigns of the aforesaid license of the said business, this transaction shall thereupon become null and void, and the deposit this day paid shall be immediately refunded to the Buyers upon demand.

"The Sellers shall furnish the Buyers with an affidavit in compliance with the Sales in Bulk Act of the State of Maryland, certifying that there are no creditors holding claims due or to become due for or upon or in connection with any of the articles hereby sold.

"AND upon payment as above provided of the unpaid purchase money, a bill of sale for the property shall be executed at the Buyer's expense by the Seller, which shall convey the property by a good and merchantable title to the Buyer, free of liens and encumbrances ex-

cept as specified herein; but subject, however, to all applicable restrictions, easements, laws, ordinances, regulations, charges, taxes and assessments, if any.

"The said parties hereto hereby bind themselves, their heirs, executors and administrators, for the faithful performance of this agreement.

"It is also understood and agreed that the Seller shall immediately have all of the insurance policies on the property so endorsed as to protect all parties hereto, as their interests may appear, and continue said insurance in force during the life of this Contract.

"This Contract contains the final and entire Agreement between the parties hereto, and neither they nor their Agents shall be bound by any terms, conditions or representations not herein written; time being of the essence of this Agreement. Cost of all documentary stamps required by law shall be divided equally between the parties hereto.

"The Seller agrees to pay commission in this transaction to the W. Burton Guy Co., broker in this transaction."

We may briefly dispose of the appellees' contention that the declaration failed to state a case in that it did not specifically allege compliance by the seller with the conditions that a joint escrow account be set up as of the date of sale, that the insurance policies be endorsed to protect the interests of all parties, and that the transfer of the license be approved by the Board of Liquor License Commissioners, The demurrer necessarily admits all of the well-pleaded allegations of the declaration, and it is alleged that the seller was always ready, willing and able to perform, but that the buyers, after signing the contract and an application for the transfer of the license, "indicated * * * that they did not intend to comply with the terms of the said agreement". It is true that the time of the buyers' action is

not definitely stated. If the first breach, or anticipatory breach, was by the buyers, the seller would be excused from the performance of acts that would be rendered nugatory by the buyers' repudiation. *Freedman v. Katzner,* 139 Md. 195, 201, 114 A. 884. We think an actionable breach may be inferred from the allegations made. If, in fact, the buyers' repudiation was based on the seller's previous breach, or failure to perform necessary conditions, it would be a matter of defense. Cf. *Keystone Eng. Corp. v. Sutter,* 196 Md. 620, 628, 78 A. 2d 191, 194. The case of *Johnson & Higgins v. Simpson,* 163 Md. 574, 581, 163 A. 832, cited by the appellees, is readily distinguishable. There the declaration was completely silent as to the performance of services upon which the claim was predicated.

The chief contention of the appellees is that the contract is so vague and ambiguous as to be incapable of "being fully understood without the insertion of countless omissions". It is true that if a contract omits essential terms or is so vague or uncertain that the court cannot identify the subject matter or determine its quality, quantity or price, it may be unenforceable, for the courts cannot make a contract for the parties or supply missing terms. *Wheeling Steel Co. v. Evans,* 97 Md. 305, 55 A. 373; *Robinson v. Gardiner,* 196 Md. 213, 217, 76 A. 2d 354, 356. On the other hand, a contract is not rendered unenforceable merely because the parties do not supply every conceivable detail or anticipate every contingency that may arise. To some extent at least, ambiguities may be resolved by construction. Cf. *Highley v. Phillips,* 176 Md. 463, 471, 5 A. 2d 824. The failure to deal with potential difficulties in remote contingencies may only mean that the parties are willing to leave their determination to chance or the operation of general legal principles. The law does not favor, but leans against, the annulment of contracts on the ground of uncertainty." *Vincent v. Palmer,* 179 Md. 365, 370, 19 A. 2d 183, 187.

In the instant case the appellees argue that one of the valuable assets bargained for is a lease of the premises where the business is conducted, yet it is not stated whether the seller is the tenant under an existing lease or a new lease is to be created. In either event, they contend there is no statement of the covenants and restrictions necessary to make a workable lease. The agreement is simply that the buyers are to have the right to occupy the premises "at a rental of $200 per month for three years, with an option of another five years". The natural import of the words used would seem to suggest that the renewal is at the option of the buyers, but at least the question whether the option is "reposed [in] the landlord or the tenant" is one that could be resolved by construction. It may be that it could be shown by extrinsic evidence that the parties bargained with reference to an existing lease. Cf. *McKeever v. Wash. Heights Realty Corp.*, 183 Md. 216, 220, 37 A. 2d 305, and *Laurel Realty v. Himelfarb*, 191 Md. 462, 469. Or it may be that neither party could supplement the written agreement, and hence could not insist upon any unexpressed covenants or undertakings beyond those stated in the agreement, except such usual or customary ones as might be implied therefrom. It does not follow that the absence of such provisions would vitiate the contract. Cf. *Restatement, Contracts*, sec. 32, Illustration 7; *Middendorf v. Milburn Co.*, 134 Md. 385, 387, 107 A. 7, and *Trotter v. Lewis*, 185 Md. 528, 535, 45 A. 2d 329, citing *Restatement, Contracts*, Sec. 370.

The appellees further contend that the provision that the last $5,000 of the purchase price be secured by a "chattel mortgage at the rate of 6% per annum, due and payable on or before two years", is too indefinite to be enforceable. In *Fifer v. Hoover*, 163 Md. 381, 163 A. 848, it was held that a contract to sell a business and stock in trade, with "a chattel mortgage as security for the unpaid purchase money," was enforceable in an action at law for breach, and that the mortgage was intended to cover the chattels conveyed. The court distinguished

cases of specific performance in equity and said, 163 Md. at page 385, 163 A. at page 850, that in those cases "the requirements of definiteness are very much more exacting than in a suit at law. And even if it were conceded that there was such lack of definiteness in the matter of the chattel mortgage that the contract could not be specifically enforced, it would not follow that a suit at law would not lie for its breach by either party." Cf. *Williston, Contracts,* (Rev. Ed.) §§ 37 and 1424, and *Restatement, Contracts, sec.* 370 (b). We find no uncertainty in the words "on or before". Cf. *Henry v. Lane,* 5 Cir., 128 F. 243, 252.

The appellees also seek to find confusion in the use of the expressions "date of the sale", "date of settlement" and the date of "possession". Here again, any possible ambiguity is not beyond the reach of construction. Nor do we find any difficulty in implying an obligation on the part of the buyers to cooperate with the seller to effect a transfer of the license. Cf. *Saul v. McIntyre,* 190 Md. 31, 36, 57 A. 2d 272, and *Grabenhorst v. Nicodemus,* 42 Md. 236, 247. Without prolonging this opinion by discussing the other objections by the appellees as to a lack of clarity in the agreement, it is sufficient to state that we think the agreement covers the essential terms and is not so lacking in certainty as to prevent an action at law for its breach. It follows that the demurrer should have been overruled.

*Judgment reversed, and case remanded,
with costs.*