QUILLEN ET AL. *v.* KELLEY ET AL., EXECUTORS

[No. 221, September Term, 1957.]

*Decided April 25, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, JR., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Howard DeMuth, Jr.,* with whom was *George E. Brown, Jr.,* on the brief, for appellants.

*John L. Sanford, Jr.,* and *L. Paul Ewell,* for appellees.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the plaintiffs below from a decree of the Circuit Court for Worcester County. This decree "adjudged, ordered and decreed that the agreement of sale and purchase referred to in the proceedings is enforceable and that the petition for a declaratory decree * * * be and the same is hereby dismissed." No question is raised as to the form of the decree. It, in effect, declared that the contract entered into by the parties was not so vague and indefinite as to have been unenforceable, and the appellants were not entitled to a return of the money paid by them thereunder upon the theory

that the contract was uncertain and indefinite, or upon any other theory; and we shall treat it as such.

The appellants and a certain Marie Codd Cook, as vendees, and Ethel M. Kelley and Harry P. Kelley, her husband, as vendors, entered into a written contract, dated September 1, 1952, for the purchase and sale of certain property known as "Hotel Royalton," (a hostelry whose hospitable accommodations and delectable meals are well-known throughout Maryland) together with certain chattels therein, situate in Ocean City, Maryland. The purchase price provided for in the agreement was $257,500, and the vendees obligated themselves "jointly and severally" to pay the same. Actually, however, the vendors were to receive a net amount for the property of $245,000, as $12,500 was to be paid by the vendors to Mrs. Cook, one of the vendees, who was a licensed broker, as her commission; this fact being known by all the parties.

At the time of the signing of the contract, the three vendees paid the vendors $15,000, as was provided in the agreement. The balance then remaining to be paid was $242,500. At this time, Mrs. Cook received from the vendors the sum of $5,000 on account of the commission to be paid her.

Under the terms of the agreement, a further payment of $20,000 was due on November 1, 1952. On that date, the appellants paid the vendors $12,500 in part payment of the $20,000 instalment due, and, at the request of the vendees, the vendors gave the vendees a credit of $7,500 for the balance due Mrs. Cook for her commission. Thus, the payment due on November 1, 1952, was paid in full.

The next payment due from the vendees was the sum of $40,000 which was payable on the last day of February, 1953. Mrs. Cook, one of the three vendees, departed this life, intestate and hopelessly insolvent, on November 25, 1952. Shortly after her death, one of the vendees notified the vendors' attorney that the $40,000 payment due in February 1953, could not be made, and requested that the vendors agree to reduce the amount of said payment from $40,000 to $10,000, which was refused by the vendors. Thereafter, there were several conferences and meetings between the parties and their coun-

sel, at all of which the vendees attempted to get the vendors to agree to a change in the terms of the agreement, but the vendors steadfastly adhered to the position that they expected payments in accordance with the provisions of the agreement. The vendors, being in possession of the property at the time of the vendees' default, retained possession thereof; but the record does not disclose that the vendors claimed the contract to be at an end or that they were not ready and willing to complete the contract upon compliance with its terms by the vendees, until the vendors answered the interrogatories in this suit nearly 3 years after the default.

On February 10, 1955, Ethel M. Kelley suffered a fatal automobile accident; following her death, Harry William Kelley qualified as executor of her estate.

From the above, it will be seen that the vendees have paid unto the vendors the sum of $22,500; and the $40,000 payment due from the vendees on the last day of February, 1953, and all subsequent payments have not been made. This suit was instituted in September of 1955.

## I

The appellants place their first hope of reversal on the ground of unjust enrichment. They state and earnestly urge that, even though they were in substantial default, to allow the vendors to retain their $22,500 part payments as well as the property sold by the vendors would be both inequitable and unjustifiable, and result in the unjust enrichment of the vendors at the expense of the vendees, especially as there was no provision in the subject-contract for a forfeiture. They claim the breach upon their part was neither wilful nor deliberate, and to permit the vendors to retain their money is to grant them a benefit to which they are·not entitled. This presents a very interesting question, and one of growing importance throughout the country.

There can be little doubt that it was the common-law rule, which has been very generally followed and generally prevails today, that where the vendee of real property makes a part payment on the purchase price, but fails to fulfill the contract

without lawful excuse, he cannot recover the payment if the vendor be ready and willing to perform his part of the contract, even though the vendor may have made a profit by reason of the default. *Great United Realty Co. v. Lewis,* 203 Md. 442, 446, 101 A. 2d 881. And this is true whether or not the contract contains a forfeiture clause. 31 *A. L. R.* 2d p. 96, sec. 17. This rule has been followed in Maryland during the course of years with a long line of decisions.

In applying this rule, there have been instances of harshness and injustice, which have caused a reconsideration of the same, in recent years, by the courts and by learned and renowned scholars and text-writers on the subject of contracts. The courts and text-writers, who do not advocate adhering to the strict common-law theory, seem to think the question of whether a plaintiff in substantial default should be given a restitutionary remedy ought to be treated in the light of the equitable rules that frown upon the enforcement of penalties and forfeitures. Both Professor Williston and Professor Corbin strongly advocate a relaxation of the harsh common-law doctrine under proper circumstances, 3 *Williston, Contracts,* (Rev. Ed.), sec. 791; 5 *Williston, op. cit.,* sec. 1473; 5 *Corbin, Contracts,* secs. 1122, etc. The common-law rule is regarded by the English Courts as unsound and intolerable. 31 *A. L. R.* 2d, p. 24. The American Law Institute recognizes the principle presented by the appellants in its famous section 357 of *Restatement, Contracts,* which apparently was prepared by Professor Corbin in collaboration with Justice Cardozo. 5 *Corbin, Contracts,* sec. 1135, n. 1. This section has been accepted in the Federal Courts, and most of the State Courts that have relaxed from the common-law rule use it as a standard. *Amtorg Trading Corp. v. Miehle, etc.* (C. A. 2nd) 206 F. 2d 103; *Newcomb v. Ray* (N. H.), 114 A. 2d 882; *Schwartz v. Syver* (Wis.), 59 N. W. 2d 489, 492; *Woodliffe v. Al Parker Securities Co.* (Mich.), 206 N. W. 499; *Freedman v. Rector, etc.* (Cal.), 230 P. 2d 629. This Court recognized the modern trend of the law in this respect in the *Lewis case, supra,* 203 Md. 448, but decided it had no application to the facts of that case. Interesting and en-

lightening articles upon the subject are listed below in a footnote.[1]

If we assume, without deciding, that the appellants' breach was not wilful or deliberate, and in a proper case we would accept the principles of said section 357, the appellants' position on this point still fails for, at least, two reasons. First, section 357 of *Restatement, Contracts,* states:

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

(3) The measure of the defendant's benefit from

1. 40 Yale L. J. 1013; 22 Ill. L. Rev. 315; 45 Mich. L. Rev. 935; 54 Mich. L. Rev. 871; 8 Miami Law Q. 648; 38 Minn. L. Rev. 172; 11 Wash. & Lee L. Rev. 269; 34 Tex. L. Rev. 582.

> the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection · (1 b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price."

Thus, it is seen at the very outset that the doctrine is predicated upon the facts that the defendant refuses to fulfill his contract, is justified therein by the plaintiff's own breach, and desires to retain a benefit accruing to him as a result of the plaintiff's part performance under the contract. Comment (b) under section 357 makes this doubly clear, wherein it is said: "The rules stated in the present Section are applicable *only* in those cases where the *defendant refuses* to perform as he promised and is justified in so doing by the plaintiff's breach * * *." See also 5 *Corbin, Contracts,* sec. 1132, and pp. 579, 585. This is not the case of a mutual rescission of the contract. When there is no mutual rescission of the contract, there must be a showing that the vendor considers the contract at an end to entitle the vendee to restitution, for there is no right to restitution so long as the vendor is entitled to specific performance. 5 *Corbin, Contracts,* p. 585; *Restatement, Contracts,* sec. 357, comment (b). In the instant case, the evidence fails to show a refusal by the appellees to carry out their part of the contract, either before or after default by the appellants. In fact, it clearly shows that the appellees were desirous of consummating the sale: as late as May, 1953, although they had been informed as early as December, 1952, that there would be a default in the payment due in February, 1953, (and there was the actual default) we find one of the vendors calling one of the vendees over the telephone stating that the vendors were willing and anxious to carry out the contract. It is true that the vendors, in answering the interrogatories herein nearly three years after default, denied that the vendees had any further rights under the contract. In this, under the circumstances of this case, we think they were justified. But, in so far as the rec-

ord is concerned, the appellees may still be ready and willing to perform the contract. As the appellants have failed to bring the case within such a factual situation as that upon which the doctrine they advance is predicated, they cannot avail themselves of the doctrine.

Second, even if the appellants had cleared the first obstacle, they still carried the burden of proof with reference to the amount they were entitled to recover. In a case of this nature, (if we continue to assume, without deciding, that the principles of said section 357 correctly state the law) appellants are not entitled to recover unless it is affirmatively shown that the appellees received from the appellants' part performance more than the appellees lost, 5 *Corbin, Contracts,* p. 553, and to permit the appellees to retain the same would unjustly enrich them. "A person is enriched if he has received a benefit. * * * A person is unjustly enriched if the retention of the benefit would be unjust." *Restatement, Restitution,* sec. 1. Thus, we see that the *onus* was upon the appellants to prove the appellees received and retained from the appellants' part performance a benefit more than the appellees' loss, and, whatever that benefit was, it would be unjust to allow the appellees to retain the same. If A and B contract to purchase and sell real estate for the sum of $1,000,000, with time being of the essence of the contract, and A pays $1,000 down with the balance due in 30 days, and A defaults in the payment of the balance in 30 days, and B, thereafter, refuses to fulfill the contract because of A's default, and retains the property and the $1,000, B has received a benefit by A's part performance, but could it be seriously argued that to permit him to retain the $1,000 under a contract of these proportions would be *unjust*?

Professor Corbin ably treats this subject, 5 *Corbin, Contracts,* section 1132, and points out that in many of the instalment cases the amount actually paid by the plaintiff, for the restitution of which he sues, is comparatively small when considered in the light of the whole purchase-price. He considers it unlikely that in such cases the amount retained by the vendor is greater than the injury suffered from the plaintiff's breach. He points out, however, that whatever the

amount, the plaintiff must show that it is greater than the injury done. The author at page 581, n. 63 feels that where the down payment is no more than 10% such proof is improbable. While not considering exactly the same principles of law as those in the instant case, in *Public Industrials Corp. v. Reading Hardware Co.* (C. C. A. 3rd), 29 F. 2d 975, a payment of $300,000 on a $3,900,000 contract was permitted to be retained; and in *Mintle v. Sylvester* (Ia.), 211 N. W. 367, retention of a payment of $35,000 on a total contract-price of $140,000 was upheld.

In said section 1132, Corbin calls attention to the fact that in some cases the down-payment or the instalments paid are large in comparison to the total purchase price; and states that in such cases, if the vendee can show by proper evidence that the vendor is retaining an amount of money that, in reality, is a penalty rather than compensation for injury, he should be given judgment for restitution of that amount, and cites a substantial number of cases to support his statement. It is apparent that it would be difficult, if not impossible, to formulate a precise and comprehensive rule in those cases where the vendee proves that the vendor's benefit exceeds his loss, as to the exact percentage of the total contract-price that it would be "just" or "unjust" to permit the vendor to retain (i.e. whether or not it would amount to a penalty or a forfeiture); but each case should be considered and decided on its own facts and circumstances, and judgment rendered in accordance with justice and equity.

In the instant case, the vendors received $22,500, about 9% of the total price agreed to be paid, from the vendees. The vendees completely failed in carrying the burden of proof and showing that this amount exceeded the vendors' loss. The only evidence which they attempted to offer was the "records of the Hotel Royalton for the years 1953 and 1954," which the chancellors ruled were inadmissible. Without considering the correctness of this ruling, it is obvious, without some special proffer such as a sale at an advanced price, that the records of the operation of the Hotel for two years would not show whether the vendors had suffered a loss for the failure to consummate a sale thereof at an agreed price. The

appellants, therefore, also fail upon this ground to bring themselves within the purview of unjust enrichment of the vendors, even if we assume, as above stated, that the principles of said section 357 correctly state the Maryland law with reference to unjust enrichment.

## II

The appellants follow with another claim that the agreement of sale is so vague, ambiguous and indefinite that it is void, and, if so, they are entitled to a refund of the payments made thereon by them. The contract, as to be expected of one of this nature, is quite lengthy, and it would unduly enlarge this opinion to set it out in full.

It needs little, if any, citation of authority to sustain the statement that if an agreement be so vague and indefinite that it is impossible to collect from it the full intention of the parties, it is void, *Strickler Eng. Corp. v. Seminar*, 210 Md. 93, 101, 122 A. 2d 563, *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A. 2d 354, and the vendee is entitled to a refund of any payments made upon the purchase price. *Globe Home Impvt. Co. v. Brothers*, 204 Md. 73, 74, 102 A. 2d 748. But courts are reluctant to reject an agreement, regularly and fairly made, as unintelligible or insensible. The agreement will be sustained if the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication. The law does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. *Middendorf, W. & Co. v. Milburn Co.*, 134 Md. 385, 387, 388, 107 A. 7. Cf. *Trotter v. Lewis*, 185 Md. 528, 45 A. 2d 329; *Schloss v. Davis*, 213 Md. 119, 131 A. 2d 287.

The appellants argue on this point first that the interest charges required to be paid by the vendees are uncertain and ambiguous, and the agreement fails to provide specifically when settlement is to be made. They claim, in quite some detail, that the contract fails to state with sufficient clarity for what period or from what dates interest should be paid on different amounts. To set forth and consider each claim

would require a long opinion to be much longer. We think it sufficient to say that a careful reading and re-reading of their claims and the agreement show that the contract is definite, certain and unambiguous in its requirements concerning interest charges; certainly there is no possible ambiguity therein beyond the reach of construction. *Rocklin v. Eanet,* 200 Md. 351, 89 A. 2d 572. And, if we assume, without deciding, that an agreement of this kind must specifically provide when settlement shall take place, it is also clear and certain in this regard.

The appellants further argue that the agreement fails to state the terms and conditions of the purchase money mortgage and what amount of insurance on the property must be carried by the vendees, and these facts are fatal to its validity under the ruling of this Court in *Applestein v. Royal Realty Corp.,* 180 Md. 274, 23 A. 2d 684. That case dealt with what the Court considered an ambiguous clause in a contract relative to the payment of principal under a mortgage required to be given by a contract of sale of real estate. The Court concluded that this clause contained inconsistent requirements; but, when the case again came to this Court, 181 Md. 171, 28 A. 2d 830, it was held that parol evidence and the proof of custom and usage were admissible to clear up the ambiguity. The opinion in the first case, 180 Md. at page 277, specifically pointed out that covenants to be placed in a mortgage, when they go beyond providing for the mere creation of a lien, are necessarily the subject of agreement between the parties; that matters such as whether the interest is to be paid annually, who is to be obligated to pay the taxes, or that the buildings should be insured are not essentially involved in a valid mortgage; and, if the contract between the parties be silent on such points, a provision therein for the execution of a mortgage is fully complied with by the execution of a mortgage containing no such covenants. See also *Hartsock v. Mort,* 76 Md. 281, 291, 25 A. 303. Compare *Triebert v. Burgess,* 11 Md. 452; *Caplan v. Buckner,* 123 Md. 590, 91 A. 481; *Fifer v. Hoover,* 163 Md. 381, 163 A. 848; *Rocklin v. Eanet, supra,* 200 Md. 358.

Of course, if an attempt be made in the agreement of sale

to set out a term or terms of a mortgage provided for therein such must be done by clear, definite and certain language; but additional terms, not essentially involved in creating the mortgage or lien, are not prerequisite to the agreement being clear and definite. If additional terms have been agreed upon, they, unquestionably, should be included in the contract, *Kikas v. Baltimore County*, 200 Md. 360, 365, 89 A. 2d 625; but, simply because additional terms have not been agreed upon does not, of itself, render the contract vague and uncertain. The contract in the present case provided that the unpaid instalments of the purchase price would be represented by ten "joint and several bills obligatory" payable at stated dates, which were to be secured "by the execution and delivery of a purchase money mortgage, mortgage bill of sale or such other instrument as may be necessary to properly and legally reconvey said property, real and personal, to the vendors to secure said bills obligatory * * *." Here, the intention of the parties seems perfectly clear: the balance of the purchase money was to be evidenced by "bills obligatory," and the vendees were obligated to execute a written bond or memorial, which would reconvey the property to the vendors so that the property would remain as security for the payments due from the vendees. The mere fact that the vendees were given a choice of performing this portion of the contract in any one of several ways does not render it uncertain. *Restatement, Contracts*, sec. 370, comment d. As was the case in *Hartsock v. Mort, supra*, the mortgage (or other instrument) was to create a lien upon the property in favor of the vendors; and the contract in this regard could have been completely complied with by the execution of a mortgage containing the covenants, and only the covenants, required by the contract. We find no uncertainty or ambiguity here.

Under this same heading, the alleged uncertainty and ambiguity in the contract, the appellants list no less than twelve sub-headings, with the sub-headings again divided on, at least, one occasion into three "queries." To consider and answer each of these in detail would prolong this opinion beyond reasonable bounds. Each contention has been thoroughly

considered, and we are unable to discover anything therein that would warrant our determining the contract to be void as being vague, indefinite or ambiguous.

### III

The appellants make as their final contention "the appellees rescinded and/or terminated the contract." As stated by them, this claim is not exactly clear, but we assume that they argue there was a mutual rescission of the contract; because, if there were no mutual rescission but merely a determination by the vendors, after the vendees' default, that the contract was at an end and that the vendors were entitled to the payments made, the right of the vendees to recover such payments would be governed by the common-law rule or the doctrine of unjust enrichment as explained in I. 5 *Corbin, Contracts,* sec. 1131, ps. 584-590. A contract may, of course, be rescinded by mutual assent, but a breach of contract is not an offer to rescind. The validity of an agreement to rescind a contract is governed by the same rules as in the case of other contracts; and the mutual rights of the parties are determined by the terms of the rescission agreement. 5 *Corbin, Contracts,* sec. 1131, p. 582. The appellants, however, are unable to obtain any succor from this source due to the fact that there is not a scintilla of evidence that the contract involved in this case was ever rescinded by mutual agreement.

*Decree affirmed with costs.*