BORN *v.* HAMMOND

[No. 33, September Term, 1958.]

*Decided November 17, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*H. Clifton Owens,* for appellants.

*Nelson R. Kerr,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a suit by a real estate broker, Frank R. Hammond, the appellee, against Louis M. Born and Margaret M. Born, his wife, the appellants, for commissions on the sale of real

estate owned by the Borns. The trial resulted in a judgment for the broker, and the owners appeal.

Another phase of the transactions giving rise to this suit was before this court in *Born v. Stancills, Inc.*, 214 Md. 443, 135 A. 2d 843. That was a suit for specific performance brought by Stancills, Inc., to enforce the contract of sale which resulted from the efforts of the broker, Hammond, and his sales representative, a Mrs. Rollins. We reversed a decree in favor of the purchaser primarily because the purchaser failed to show that it was ready and able to perform the contract at the appointed time, and time was expressly made of the essence of the agreement.

On May 12, 1955, the Borns entered into an agreement with Hammond by which they agreed to pay to the latter a commission of 5% on the sale of land and improvements thereon owned by the Borns at a price of $140,000. They also entered into two agreements with Stancills, Inc. (Stancills) dated May 12th, 1955, both of which were prepared by the Borns' then counsel. The first agreement permitted Stancills, which was in the sand and gravel business, to make certain test borings on the Borns' property. The second granted Stancills an option for a period of six months to purchase the property for $140,000, payable as follows: $80,000 as a down payment and $15,000 a year for each of the next four years, with interest at 4% on unpaid balances. The option agreement also contained provisions with regard to the Borns being permitted to occupy the house on the property rent free and provisions stating what should be considered as fixtures and what should not be so considered.

On November 10, 1955, two days prior to the expiration of the option, the Borns and Stancills entered into a contract of sale covering the property subject to the option. The total price remained at $140,000, but the terms of payment were changed. Under the November agreement $10,000 was payable at or before the signing of the contract (and this amount was paid), $70,000 was to be paid on January 12, 1956, and the balance of $60,000 was to be paid at the rate of $15,000 a year for four years, with interest at 4% payable semi-an-

nually on successive unpaid balances. The agreement further provided (*inter alia*):

> "And upon payment of the sum of Seventy Thousand Dollars ($70,000) and the execution of a purchase money mortgage by the Buyer for the remaining sum of Sixty Thousand Dollars ($60,000), a deed for the property shall be executed at the Buyer's expense by the Sellers, which shall convey the property by a good and merchantable title to the Buyer, free of liens and encumbrances except as specified herein; but subject, however, to all applicable restrictions, easements, laws, ordinances, regulations, charges, taxes and assessments, if any.
>
> "And it is hereby understood and agreed that the Sellers shall reserve the right to occupy the dwellings and buildings on the premises rent free until the entire purchase price shall have been paid upon payment by the Sellers of all maintenance charges, taxes, and other public charges against the premises and the continuance of all present insurance on the premises.
>
> * * *
>
> "And it is hereby further agreed that the sale of the farm house and all other buildings shall include only those fixtures attached to said buildings and made a part thereof and shall not include the household furnishings and farm equipment. The only items to be construed as fixtures in the farm house are the furnace, hot water system, sink, kitchen cabinets and storm doors and windows. All other items are to be construed as household furnishings, including the kitchen range, refrigerator, and deep freeze units."

The appellants' first contention is that the contract of November 10, 1955, was not sufficiently definite to be an enforceable contract within the meaning of Section 17 of Article 2 of the Code (1957). This contention is directed at several provisions of the agreement which have been set forth above

and two others which may be thus summarized: one, a requirement that six months' notice to vacate be given to the Borns if Stancills should elect to prepay the whole remaining unpaid balance of the purchase price; the other, that until the full purchase price should be paid Stancills should not carry on any of its business operations within 400 feet of the principal abutting highway or within a radius of 300 feet of the Borns' house.

The argument based upon the restrictions last referred to is that the Borns might not get what they expected during the last six months of occupancy to which they would be entitled if Stancills prepaid the balance and then excavated sand and gravel up to or almost up to the house. The Borns might then find living conditions "very disagreeable." If the appellants' construction of the contract is correct on this point, it would seem that the difficulty does not arise from indefiniteness, and there is nothing to suggest that any fraud or deception was practiced upon the Borns. On the contrary, it appears that the contract was drawn by the Borns' then counsel. We find no force in the appellants' contention on this point.

The appellants also contend that the clause stating the expenses which they would have to pay if they exercised their option to remain on the premises is vague and uncertain. They suggest a nearly fantastic construction of "maintenance charges" as possibly covering the cost of shoring up the house if Stancills' excavating operations should undermine its foundations, and they ascribe to the words "other public charges" which are coupled together with "taxes" a meaning of almost unlimited possible extent. These contentions, we think, go far beyond the ordinary meaning of rather ordinary words and are not sustainable. In *Gibbs v. Meredith,* 187 Md. 566, 51 A. 2d 77, it was held that if a contract is susceptible of two constructions, one of which would produce an absurd result and the other of which would carry out the purpose of the agreement, the latter construction should be adopted. Furthermore, as was said in *Rocklin v. Eanet,* 200 Md. 351, 357, 89 A. 2d 572: "* * * a contract is not rendered unenforceable merely because the parties do not supply every con-

ceivable detail or anticipate every contingency that may arise."
To like effect see also *Quillen v. Kelley,* 216 Md. 396, 407,
140 A. 2d 517, where it was said: "* * * courts are reluc-
tant to reject an agreement, regularly and fairly made, as un-
intelligible or insensible. The agreement will be sustained if
the meaning of the parties can be ascertained, either from the
express terms of the instrument or by fair implication. The
law does not favor, but leans against the destruction of con-
tracts because of uncertainty; therefore, the courts will, if
possible, so construe the contract as to carry into effect the
reasonable intention of the parties if that can be ascertained.
*Middendorf, W. & Co. v. Milburn Co.,* 134 Md. 385, 387,
388, * * *."

The appellants also urge that the contract is too vague to be
enforced because its terms with regard to the purchase money
mortgage are not sufficiently definite. Our recent decisions in
*Quillen v. Kelley, supra,* and in *Baker v. Dawson,* 216 Md.
478, 141 A. 2d 157, make any extended discussion of this
contention unnecessary. The appellants rely on the first
*Applestein v. Royal Realty Corp.* case, 180 Md. 274, 23 A.
2d 684, but we think that this case, like the *Baker* case, falls
under the second decision (based upon an amended declara-
tion) in *Applestein v. Royal Realty Corp.,* 181 Md. 171, 28
A. 2d 830. The provision for the "continuance of all present
insurance on the premises" seems to be concerned primarily
with the amount and kind of the insurance to be carried,
rather than the continued existence of policies in force at the
time when the contract was made.

A suggestion that the character of the purchase money
mortgage—whether it was to be a first mortgage or not—
was not specified, seems to us without merit. The contract
called for a conveyance by the Borns to Stancills of a good
and merchantable title free of liens and encumbrances, except
as specified in the contract. The exceptions were of usual
kinds, such as restrictions, easements and taxes. Clearly, a
first mortgage was contemplated.

For a comprehensive annotation on uncertainty as to terms
of a mortgage, etc., contemplated by a real estate sales con-

tract as affecting the right to specific performance, see 60 A. L. R. 2d 251.

The appellants' next contention is that the contract covered personal property, as well as real property, and hence was not a contract for the sale of real estate, so as to entitle the broker to the benefits of Section 17 of Article 2 of the Code (1957). This contention is founded upon the clause under which the parties undertook to define what should and what should not be regarded as fixtures. Actually, only two of these items are challenged—the storm windows and doors and the hot water heater. As to the latter, the appellants speak of the hot water "heater", but the contract speaks of the hot water "system". The heater was a part of it and was, of course, connected to pipes. The storm windows seem to have been rather permanent installations; they were caulked by Mr. Born. The storm doors were probably in a more debatable position if we had to decide whether or not, as an abstract proposition, they should be considered to be fixtures.

We do not think it necessary to decide such an abstract question. The problem as to what do and what do not constitute fixtures is often a difficult one, and there is a considerable twilight zone. When the rights of third parties are not adversely affected, and they are not so affected here, we see no reason why the parties may not validly and effectively solve such a problem by agreement between themselves. Bronson, *Law of Fixtures,* p. 133; *Miller v. Struven,* 63 Cal. App. 128, 218 P. 287, 289. Bronson states certain limitations on this rule which are not applicable here. See also *Tiffany, Real Property,* 3rd Ed., § 612; Thompson, *Real Property,* Perm. Ed., § 182; *Western Maryland Dairy, Inc. v. Maryland Wrecking & Equipment Co.,* 146 Md. 318, 321, 322, 126 A. 135.

The appellants' last contention is that the trial court erroneously sustained an objection to a question addressed to Mr. Stancill which was intended to show bias on his part against the Borns and in favor of Mr. Hammond. The witness had been called by the plaintiff and cross-examination had been concluded. He was recalled by the defendants. The plaintiff inquired as to the basis upon which he was being recalled.

A colloquy ensued during which the trial judge correctly pointed out that Mr. Stancill was not a party to the suit and hence could not be called by the defendants as an adverse witness and impeached under Section 9 of Article 35 of the Code (1957). The defendants then called him as their witness. They were not entitled to impeach their own witness. *B. & O. R. Co. v. State, Use of Woodward,* 41 Md. 268, 295; *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 538, 59 A. 2d 313; *Bruce v. State,* 218 Md. 87, 145 A. 2d 428.

The verdict of the jury determined adversely to the Borns their contention at the trial that under the agreement between them and Mr. Hammond no commissions were to be paid on the sale unless and until Stancills made the $70,000 payment which the contract of sale called for; and no contention to the contrary is pressed in this court. The evidence, we may add, showed a 5% commission to be in accordance with custom on a sale of the kind here involved. It was also the rate specified in the agreement of May 12th, 1955, between the Borns and Hammond. The suit was based upon two of the common courts as well as upon that agreement.

The judgment should be affirmed.

*Judgment affirmed, with costs.*