**In re DAVID ORGELL, INC., Debtor.**

**Bankruptcy No. LA 89–25928.**

United States Bankruptcy Court,
C.D. California.

Aug. 3, 1990.

Richard M. Neiter, Clarrisse Young, Stutman, Treister & Glatt, Los Angeles, Cal., for debtor.

Leonard A. Goldman, Goldman, Gordon & Lipstone, Los Angeles, Cal., for the landlord.

## MEMORANDUM OF DECISION

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This contested proceeding raises the issue of whether a landlord may enforce a clause in a long-term commercial lease, that provides for an increase in the rent from the contract rate to a market rate upon assignment of the lease, at the time that the debtor assumes and assigns the lease pursuant to Bankruptcy Code § 365, 11 U.S.C.A. § 365 (West 1979 & Supp. 1990).

The Court holds that section 365 prohibits the enforcement of such a provision in a commercial lease at the time of an assumption and assignment under section 365. Apart from this particular assignment, however, the lease provision remains intact in the lease agreement, and its enforceability is determined by applicable law in any future assignment.

### II. FACTS

Prior to the filing of this bankruptcy case, debtor David Orgell, Inc. ("Orgell") operated a fine silver, crystal and china store on Rodeo Drive in Beverly Hills, California and in two Southern California shopping centers. The business was operated by David Orgell and members of his family. David Orgell died in late 1987, and the remaining family members were unable to operate the business successfully.

After the filing of this bankruptcy case on November 22, 1989 (the eve of Thanksgiving), this Court authorized the liquidation of the inventory during the holiday season, and the disposition of the shopping center leases. After liquidating essentially all of the assets of the estate apart from this lease, Orgell has proposed a liquidating plan of reorganization that has been approved by this Court, subject to Orgell's ability to sell its one remaining leasehold without triggering an increase in rent to the market rate.

Orgell's remaining property is its lease on Rodeo Drive in Beverly Hills, one of the most prestigious and most expensive retail locations in the world. Orgell initially rented the property, consisting in approximately 6120 square feet,[1] from Walter N.

---

1. The standard store on Rodeo Drive is 25 feet wide and approximately 120 feet deep, for a

Marks, Inc. ("Marks"), the owner of the premises, in 1958. Subsequent leases included a fifteen-year lease beginning in 1975. By 1985 the rental rate under the 1975 lease was substantially below the market rate for retail shops on Rodeo Drive. At that time Orgell and Marks entered into a new 15-year lease at a higher rental rate, which the Court assumes was likewise somewhat less than the existing market rate for the property.

At the present time the 1985 lease has an unexpired term of almost ten years. It provides for rent at the rate of approximately $2.45 per square foot per month, and is subject to annual adjustments based on the Consumer Price Index. According to the evidence before the Court, the present market rate for retail leases on Rodeo Drive is approximately $8.00 per square foot per month.[2] If Orgell can assume and assign the lease without triggering the rent increase provision, it can realize approximately $5,000,000 for the estate.

Orgell proposes to assume the lease and to assign it to R & S Antiques, Inc. ("R & S"). Marks objects to the proposed assumption and assignment on the grounds that the lease provides such favorable terms solely because of the special relationship between it and the debtor's principals, and that this Court may permit an assignment only if the rent is increased to the current market rate.[3] Marks argues that allowing the debtor to benefit from the lower market rental of the premises through assignment to R & S Antiques would be tantamount to permitting the assumption of the lease in part, since the restrictive clauses would have to be ignored.

## III. DISCUSSION

The assumption and assignment of a lease of real property by a debtor is governed by Bankruptcy Code § 365(f), which provides in relevant part:

(1) [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor ... that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C.A. § 365(f) (West 1979). Marks concedes that R & S has provided adequate assurance of future performance under section 365(f)(2)(B), and that the only issue is whether the debtor may assign the lease to R & S without triggering the increase in rent to the market rate.

■ It is well settled that if a debtor elects to assume an executory contract or unexpired lease, it must assume the entire

total of approximately 3,000 square feet. The Orgell store is a double width store, and approximately 124 feet deep.

2. Thus the market rate monthly rental for a standard 25-foot wide store is approximately $24,000, and is approximately $48,960 for a store the size of Orgell's.

3. The lease states, in relevant part:
   52. **ASSIGNMENT AND SUBLETTING**

   .    .    .    .    .

   It is because of a long and fine standing relationship that Lessor and Lessee have enjoyed, dating back to 1958 when Lessee first became a tenant in Lessor's building, that Lessor is willing to enter into this lease at a rental rate below market value, provided that

Lessee's business remains a family business— that is wherein the business is wholly owned and managed solely by members of the Orgell family. It is recognized at present that the business is incorporated as David Orgell, Inc., a California Corporation and 100% of the stock is owned by members of the Orgell family.

Therefore, in the event that lessee assigns this Lease or sublets all or a portion of the demised premises ... then in any of such events the monthly rental on the demised premises shall be increased to the date of that event to coincide with what is determined to be a fair market rental value for the premises....

contract or lease *cum onere*, except insofar as the rights of the parties are altered by the Bankruptcy Code. *See, e.g., Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134, 141, 66 S.Ct. 937, 942, 90 L.Ed. 1132 (1946) (Bankruptcy Act); *In re Nitec Paper Corp.*, 43 B.R. 492, 498 (S.D.N.Y.1984); *Rockland Center Associates v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 304 (Bankr.S. D.N.Y.1983). The debtor may not assume only a favorable portion of an executory lease, and reject or avoid an unfavorable portion. *See, e.g., Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir.1985); *Nitec, supra*, at 498; *In re Gamma Fishing Co.*, 70 B.R. 949, 952 (Bankr.S.D.Cal.1987). Marks relies on this line of cases to argue that if the debtor assumes and assigns the lease here at issue, the assignee must pay the higher market rental for the premises.

The fallacy in Marks' argument results from the fact that the Bankruptcy Code, unlike the Bankruptcy Act, does alter the rights of the parties in connection with the assignment of a lease or contract after its assumption by a debtor. An increase in rent upon the assignment of a lease pursuant to section 365 is governed by section 365(f)(3), which provides:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or *modifies*, or permits a party other than the debtor to terminate or *modify*, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or *modified* under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C.A. § 365(f)(3) (West Supp.1990) (emphasis added).

The clear import of section 365(f)(3) is to invalidate any provision of an executory contract or unexpired lease which burdens the debtor's ability to make an effective assignment by modifying its terms so that the assignee receives a different agreement than the debtor had. This paragraph was included as part of the Bankruptcy Reform Act of 1978 to strengthen the debtor's hand when dealing with provisions designed to prohibit, restrict or condition the assignment of an executory contract or unexpired lease. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 349 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6305; S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5845. Congress adopted this policy favoring the assumption and assignment of contracts as a means of assisting a debtor in its rehabilitation or liquidation effort.

In a number of reported opinions courts have found that provisions modifying or limiting the right of a contracting or leasing party are unenforceable. *See, e.g., In re Howe*, 78 B.R. 226, 228–31 (Bankr.D.S.D. 1987) (four percent assumption fee for land contract); *In re Mr. Grocer, Inc.*, 77 B.R. 349, 352–53 (Bankr.D.N.H.1987) (right of first refusal in a lease); *In re Coors of North Mississippi, Inc.*, 27 B.R. 918, 922–23 (Bankr.N.D.Miss.1983) (right to refuse assignment of distributorship).

*In re J.F. Hink & Son*, 815 F.2d 1314 (9th Cir.1987), provides no assistance to Marks. While the facts in *Hink* were facially similar to those before the Court, there are crucial differences. *Hink* involved a lease provision that modified an obligation on account of an assignment. The debtor was the lessee of a multi-story parking garage adjacent to the debtor's department store. The lease was described as a "sweetheart lease," negotiated between family members. The existing rental amount was extraordinarily favorable to the debtor. The lease, like that before this Court, provided that if the lease was ever assigned, the rental amount would be renegotiated to reflect the then commercially reasonable amount. The Ninth Circuit held that section 365(f)(3) would govern in the absence of other circumstances, but that the potential assignee had waived his right to avoid the increase in rent. In addition, he had failed to bring section 365(f)(3) to the attention of the bankruptcy court and

had acquiesced in that court's order that the assignment would be subject to this provision.

The rent increase provisions of the lease in this case were clearly designed to alter the basic terms of the lease if the principals of the debtor should ever transfer the lease to a non-Orgell family member. The resulting increase to a market rental rate for the balance of the lease term would eliminate any value the debtor could realize upon assigning the lease. Such a result is contrary to section 365(f)(3) and the Congressional policy that supports it. As a matter of bankruptcy law, a landlord may not enforce a rent increase clause tied to the assignment of a commercial lease of real property that the debtor seeks to assume and assign pursuant to section 365.

It is of no consequence that Marks seeks only to increase the rental under its lease to a reasonable market rate. In enacting section 365(f)(3) Congress decided that any contractual provision that "modifies" the assignment of such a lease may not be invoked upon the assignment of a lease under section 365. Any increase in rent resulting from the assignment of a lease pursuant to section 365 is a modification of a right or obligation that is prohibited by the express language of section 365(f)(3).

Marks complains that it is suffering a loss under the ruling of the Court, while the principals of Orgell are to receive a distribution under the plan of reorganization approved by the Court. However, Marks is not suffering any loss that is entitled to legal recognition. Marks contracted with Orgell to receive the rent that is to be paid by R & S. If Orgell had continued in possession under the lease, Marks would have been entitled to no more. In effect, Marks is seeking a windfall in consequence of Orgell's misfortune. Bankruptcy law dictates that Marks is not entitled to such a windfall in consequence of the assignment of the lease.

## IV. CONCLUSION

The court concludes that Bankruptcy Code § 365(f)(3) prohibits the enforcement of a commercial lease provision for increase in rent upon assignment of the lease, where the assignment is made under section 365. In consequence, the Court finds that Marks may not increase the rent on the debtor's lease upon its assignment to R & S. The debtor's motion to assume and assign the lease is granted on this condition.