In re OFFICE PRODUCTS OF AMER-
ICA, INC. d/b/a Office Stop and Laure-
ate Advertising Agency, Debtor.

**Bankruptcy No. 91–51849–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 22, 1992.

Helen G. Schwartz, Habbeshaw, Kalmans & Schwartz, P.C., San Antonio, Tex., for Trustee Randolph N. Osherow.

Michael G. Colvard, Martin, Drought & Torres, Inc., San Antonio, Tex., for Eastpoint Partners, L.P.

## DECISION AND ORDER ON MOTION FOR DISBURSEMENT OF SALE PROCEEDS FROM LEASE ASSIGNMENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of Eastpoint Partners, Ltd., movant, for Disbursement of Sale Proceeds from Lease Assignment. Upon consideration thereof, the court finds and concludes that under the terms of the lease, Eastpoint is not entitled to the relief requested; therefore, the motion will be denied.

### FACTUAL BACKGROUND

Office Products of America, d/b/a Office Stop and Laureate Advertising Agency, operated retail office supply outlets in several eastern states, including three outlets in Maryland, located in Baltimore (the Eastpoint store), Towson (the Towson store), and Glen Burnie (the Glen Burnie store).

On May 14, 1991, Debtor filed a chapter 7 bankruptcy petition. Very shortly after the petition was filed, the trustee received an offer from Office Depot to purchase two

of the three store locations referenced above, as well as the leasehold interests relating to the Eastpoint and Towson stores. The trustee immediately filed a motion to sell, and solicited other offers. On June 5, 1991, the trustee received a second offer from Staples, Inc., in which Staples proposed to purchase the aforementioned assets and leasehold interests of the debtor, as well as the Glen Burnie Store. After a hearing and bidding process, the Staples bid was accepted and approved by the court.

The Staples offer was contingent upon (and indeed required) the trustee's assumption of the leasehold interests at the Eastpoint and Towson stores (the "Eastpoint" and "Towson" leases, respectively), pursuant to the then-current terms, and assignment thereof to Staples. Staples also required the trustee to cure all defaults and otherwise comply with the requirements of 11 U.S.C. § 365(b). In addition, the trustee was to "comply with the requirements of 11 U.S.C. § 363(b), § 363(f), and § 365(f)" with respect to the assignments.

On June 24, 1991, this court entered an order incident to the sale entitled "Order and Findings of Fact and Conclusions of Law Authorizing and Approving Motion to Assume and Assign Leases of Office Supply Stores in Eastpoint, Maryland and Towson, Maryland Upon 10 Days' Notice" (the "Order"). In the Order, this court specifically found that the Staples purchase offer was contingent on the assumption and subsequent assignment of the leases to Staples; that the terms of the offer were fair and reasonable, having been negotiated at arm's length by the parties with the advice of counsel; that the sale of assets was warranted under the circumstances, and was in the best interests of the bankruptcy estate, the creditors of the estate, the debtor, the equity security holders, and all parties in interest; and that the assumption and assignment of the leases was warranted under the circumstances, and has relieved the estate from potential claims for rejection damages by the lessors.

Notice of the Order of June 24, 1991, along with notice of a 10 day period within which to object to the Order, was given to all persons and entities entitled to notice, including the lessors of the two locations, to allow them to consider the proposed assumption and assignment. The lessor of the Eastpoint premises, Eastpoint Partners, L.P., a Maryland-based limited partnership, and the lessor of the Towson premises, T.G. Stores, Inc., based in New Jersey, neither responded nor objected to the proposed assumption and assignment on the terms set out in the Order.

The Eastpoint Lease contained a section entitled "Assignment and Subletting" which required the tenant to obtain the lessor's consent in order to assign the lease, whether the assignment was to be by operation of law or otherwise. Eastpoint Lease, Section 10.01. The article also directed the tenant to give notice to the lessor of any intention to assign the lease. Eastpoint Lease, Section 10.03. Finally, the article provided that "[i]f Landlord gives its consent to any assignment of this Lease ..., Tenant shall in consideration therefor pay to the Landlord (i) ... an amount equal to all sums and other consideration paid to Tenant by the assignee or by any other person ... (including sums paid for the sale of Tenant's fixtures, leasehold improvements, equipment, furniture, furnishings or other personal property, less the then net unamortized or underappreciated cost thereof determined on the basis of Tenant's federal income tax returns)...." Eastpoint Lease, Section 10.-04.

On June 25, 1991, the trustee executed an Assumption of Lease relating to the Eastpoint Store. Immediately thereafter, the trustee executed an Assignment and Assumption of Lease transferring the lease to Staples. The trustee neither sought nor obtained Eastpoint's consent before the execution of either of these documents. Eastpoint, who had notice of both transactions, neither objected to the assumption or the assignment nor complained that the trustee failed to secure Eastpoint's consent as required under section 10.01.

On October 15, 1991, Eastpoint filed this Motion, seeking disbursement of the pro-

ceeds from the lease assignment. Eastpoint maintains that under section 10.04, it is entitled to that portion of the monies received from Staples representing consideration for the leasehold interest, as well as those sums received in consideration for the furniture, fixtures, equipment, leasehold improvements, and other personalty. It wants the trustee to render an accounting and to pay over the identified proceeds. Eastpoint urges the court to find that the sale proceeds identified by section 10.04 of the lease never became property of the bankruptcy estate, and should therefore have been turned over to Eastpoint immediately upon the close of the transaction. Alternatively, Eastpoint argues that even if the proceeds did become property of the estate, they should still be remitted, because the trustee assumed the lease "pursuant to its then-current terms," which, they argue, included section 10.04 of the lease. In addition, Eastpoint seeks to recover the costs incurred in bringing this motion.[1]

The trustee responds that the assignment of the lease was made and approved *pursuant to § 365(f)*, under which a court may strike down provisions which tend to operate as restrictions on a debtor's or trustee's ability to assign leases. The trustee challenges the validity of section 10.04 on those grounds; Eastpoint counters that it is now too late for the trustee to raise this point, as the trustee has already assumed the lease and is bound by all of its terms, including article 10, regarding assignments. Eastpoint points out that it did not object to the assumption and assignment when first proposed by the trustee precisely because it intended to enjoy the benefits of section 10.04. Eastpoint says that the June 24, 1991 Order, which authorized the assumption of the lease by the trustee pursuant to its then-current terms is dispositive, and should preclude the trustee from raising any objections to section 10.04 by way of § 365(f)(1) at this time.

**1.** Eastpoint also contended, in a related pleading, that the bankruptcy case had been filed in bad faith in order to evade the operation of Article 10 of the lease. This contention was rejected, both because it was baseless and because the trustee could hardly be held accountable even if the case *had* been filed in bad faith.

## ANALYSIS

### I. Property of the Estate

 Eastpoint initially argues that the sale proceeds derived from the sale of the debtor's assets and leasehold interests and identified under section 10.04 of the lease did not become property of the estate, and that the trustee should have remitted said proceeds as he had no title or interest therein. This contention is without merit.

 The Bankruptcy Code provides that all property of the debtor becomes property of the estate as of the date of the filing of the petition. 11 U.S.C. § 541. The provision is intended to be broad in scope, and includes, with limited exceptions, all legal and equitable interests held by the debtor. 11 U.S.C. § 541(a)(1), (b), (c)(2); *see In re Lucas*, 924 F.2d 597, 599 (6th Cir.1991). A lease of real property is within the scope of § 541, as it creates an estate in the property that vests in the trustee. *See Matter of Hotel Governor Clinton, Inc.*, 96 F.2d 50 (2d Cir.), *cert. den. sub nom., Canter v. Ramsey*, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 390 (1938). § 541 also provides that all proceeds from the sale of estate property are also estate property. 11 U.S.C. § 541(a)(6). Therefore, a leasehold interest held by a debtor becomes estate property at the moment the petition is filed, and if the debtor's rights in the leasehold are transferred, any consideration received would also be estate property.

Eastpoint's argument that section 10.04 of the lease prevented the sale proceeds from becoming property of the estate is untenable. Section 10.04 does not vest title to those proceeds in the lessor, but instead requires the tenant to pay over the equivalent of those proceeds, in consideration for Eastpoint's consent. Any "vesting" provision in the lease would run afoul of § 541(a) anyway and would thus be unenforceable.

*II. Finality and Effect of the
June 24, 1991 Order*

Both Eastpoint and the Trustee rely on this court's June 24, 1991 Order to support their respective positions. Eastpoint argues that the sale proceeds should be remitted because the trustee's assumption of the lease was approved *pursuant to its then-current terms,* which, they argue, included article 10.04. The trustee responds that the terms of the Order reserving the power to hear any and all matters regarding the leases and assignments, including those arising under § 365(f), effectively negate any implied approval that may have existed with respect to section 10.04. To determine whether the Order has either effect, the court must construe its terms.

a. Finality of the Order

■ Initially, the court notes that the Order is final. A final order terminates the litigation on the merits and leaves the court with nothing to do but execute the order. *See First Nationwide Bank v. Summer House Joint Venture,* 902 F.2d 1197, 1199 (5th Cir.1990). The fact that an order may reserve some power to the issuing court to hear matters at a later date does not destroy the finality of the order. *See In re Moody,* 817 F.2d 365 (5th Cir. 1987).

The Order of June 24, 1991 terminates the litigation on the merits of the case by approving the assumption and assignment of the leases. All parties in interest were given ten days within which to object to the court's approval, but no objections were filed; therefore, at the expiration of that objection period, the Order became final, and the opportunity to object to the court's approval ended. The order does reserve jurisdiction to hear any matters which may arise regarding the assumption and assignment of the leases. However, this retention of jurisdiction is only that necessary to carry the Order into effect; it does not affect the Order's finality.

b. Implied Approval of Section 10.04

■ Having concluded that the Order is final, the court turns to the language of the Order to determine its effect. As noted, the Order approves the trustee's assumption of the leases pursuant to its terms. Eastpoint would have the court find within this general approval language an implied approval of section 10.04, and would then raise this implied approval as a shield against the trustee's defense under § 365(f). However, the court is bound to consider the Order in its entirety, and cannot consider the separate parts independently.

It is true that, when taken alone, the general language to which Eastpoint refers would seem to imply approval of all the terms contained within the lease. However, when read in conjunction with the remainder of the Order, it becomes apparent that the court intended no such approval. In approving the assumption, the Order directed the trustee to comply with the requirements of § 365(b), § 363(b), § 363(f) and § 365(f), thereby making the assignment subject to those Code provisions. Order, p. 10. The order retained jurisdiction over all matters which might arise, even after the close of the case, with respect to the assumption and assignment of the lease. Order, p. 14–15. Together, these two provisions express the court's expectation that further litigation might be necessary regarding the leases, specifically with respect to § 363(b), § 363(f), § 365(b), and § 365(f); they also express the court's intention to hear those matters so as to carry its Order into effect. The practical effect of the two provisions is to negate any implied approval of section 10.04 in the Order, at least to the extent that that section might conflict with those particular sections of the Code. The trustee may properly challenge the validity of the section under § 365(f) under the terms of the Order, as he has done here.

■ The assumption and assignment authorized by the Order were to be accomplished, by its terms, subject to § 365(f)(1). That section permits a trustee to override lease provisions which operate to chill or discourage lease assignments. § 365(f)(1) provides as follows:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unex-

pired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

11 U.S.C. § 365(f)(1).

■ Cases construing § 365(f) confirm that lease provisions designed to impede a tenant's ability to assign an executory contract or unexpired lease by requiring consent or imposing economic impediments to assignment will not be given effect to bar or discourage assignment when the tenant is the trustee in bankruptcy. *See In re Mr. Grocer*, 77 B.R. 349, 353–54 (Bankr.D.N.H. 1987) (lessor's right of first refusal over potential assignees invalid restriction on assignment); *see also In re David Orgell, Inc.*, 117 B.R. 574, 576 (Bankr.C.D.Cal. 1990) (provision allowing rent increase in event of assignment invalid); *In re Howe*, 78 B.R. 226, 230–31 (Bankr.D.S.D.1987) (provision calling for 4% assumption fee was unnecessary restriction on assignment). In this case, the trustee successfully used § 365(f)(1) to achieve just that result.

■ Understanding why this is so requires an examination of the Eastpoint lease. When construing an instrument, courts are required to construe it as a whole, if possible, so that none of the provisions are rendered meaningless. *See Jeffrey Sneider–Maryland, Inc. v. LaVay*, 28 Md.App. 229, 345 A.2d 79, 84 (1975). When an instrument is ambiguous, the court must look to the intent of the parties, which is to be determined from the instrument as a whole. *See Rigger v. Baltimore County*, 269 Md. 306, 305 A.2d 128, 131 (1973). In the event of an ambiguity, however, the instrument is to be construed against the maker. *See Kelley Construction Co., Inc. v. Washington Suburban Sanitary Commission*, 247 Md. 241, 230 A.2d 672, 678 (1967). Further, where there

is specific language in one clause that negates or modifies general language in another clause, it is the specific language that controls. *See Zellinger v. CRC Development Corp.*, 281 Md. 614, 380 A.2d 1064, 1070 (1977).

Applying these principles to the lease at hand, it is easy to see that section 10.04 was never triggered, because the trustee, by way of § 365(f)(1), avoided seeking the lessor's consent in the first place. In so doing, the trustee avoided ever having to pay for that consent, as section 10.04 otherwise envisioned.

■ Section 10.01 of the lease requires the tenant to obtain the consent of the lessor prior to making any assignments; the section also provides that the failure of the tenant to obtain the lessor's consent to one assignment does not waive the requirement that the tenant obtain the lessor's consent to other assignments. Section 10.03 requires the tenant to give the lessor notice of any proposed assignment, and subjects the tenant to possible lease termination if he fails to do so. Section 10.04 imposes a severe economic disincentive to assignment, by providing that the tenant must *purchase* the required consent by paying the lessor all the proceeds attributable to the sale of the leasehold as well as any proceeds from the sale of any personalty in place at the leasehold. Section 14.07 of the lease provides that in order to be effective for any purpose under the lease, consent must be express and in writing. Taken together, these provisions work to discourage assignment and would run afoul of § 365(f)(1). 11 U.S.C. § 365(f)(1); *see David Orgell, Inc.*, 117 B.R. at 576; *Mr. Grocer*, 77 B.R. at 353–54; *Howe*, 78 B.R. at 230–31.

In this case, the trustee did not seek Eastpoint's consent prior to making the assignment, as he was otherwise required to do under section 10.01.[2] Instead, be-

---

**2.** It is true that Eastpoint was given notice of the trustee's motion to assume and assign the leases; however, such notice cannot be construed as a request for Eastpoint's consent. The trustee was obligated to give Eastpoint notice under the Rules; at the least, the appearance of notice of a

hearing on the trustee's motion without any prior attempt by the trustee to secure Eastpoint's consent should have placed them on notice that the trustee was about to assign the lease in violation of section 10.01.

cause the Order authorized the assignment subject to § 365(f), the trustee correctly assumed that he would be able to assume and assign the lease without reference to any provision contained in the lease which operated to prohibit, restrict, or condition his assignment of the lease. Therefore, he did not seek Eastpoint's consent. By side-stepping the obligation otherwise imposed under section 10.01, the trustee also avoided having to pay the lessor under section 10.04. This latter section, by its own terms, only directs payment *in consideration for* the lessor's consent, which consent was neither sought nor given.

Eastpoint's position is that its acquiescence to the court's June 24th Order approving the assumption and assignment (i.e. its decision not to object) provides the requisite consent. However, that position is not well-founded. First, it is abundantly clear that the trustee, by filing the motion pursuant to his powers under § 365(f), was not asking for the lessor's consent (though he did afford Eastpoint the opportunity to object, as required by the Federal Rules of Bankruptcy Procedure; *see* discussion *supra* at note 2). Secondly, the lease *by its own terms* stipulates that the only acceptable consent for the purposes of the lease is express, written consent. *See* Eastpoint lease, section 14.07; [3] Eastpoint's acquiescence, by the terms of its own lease, cannot provide the consent necessary under section 10.04. *Kelley Construction Co., Inc. v. Washington Suburban Sanitary Commission*, 247 Md. 241, 230 A.2d 672, 678 (1967) (where ambiguity exists, terms are to be construed strictly against drafter).

 Thus, as in the old maxim ("for want of a nail, the shoe was lost ..."),[4] for

lack of the trustee's seeking consent pursuant to section 10.01, Eastpoint's entitlement to payment under section 10.04 was forever lost. Eastpoint should have availed itself of the opportunity to timely object to the trustee's violation of section 10.01, to ensure the right to raise its entitlement to payment under section 10.04 (to the extent it might otherwise have been allowed that right; *see* discussion of § 365(f)(1) *supra*). By failing to enforce the provisions of section 10.01, Eastpoint lost whatever opportunity it might otherwise have had to earn the consideration described in section 10.04. Instead, Eastpoint chose to acquiesce in the trustee's action, and must now live with the consequences of that decision.

## CONCLUSION

In sum, the court concludes that Eastpoint has failed to demonstrate itself entitled to the funds it seeks, because the right to payment upon which the relief requested relies never arose. This conclusion renders moot further discussion of Eastpoint's remaining arguments. The Motion for Disbursement of Proceeds from Lease Assignment is DENIED.

So ORDERED.

---

Of course, even if Eastpoint had filed a timely objection to the trustee's action, based on the trustee's failure to comply with section 10.01, Eastpoint could not have stopped the assumption and assignment, because the trustee was able to avoid the operation of section 10.01 under § 365(f)(1).

**3.** 14.07. NO WAIVER. No consent, approval or waiver, express or implied, by landlord or tenant to or of any breach of any covenant, agreement or obligation of the other shall be construed as a consent or waiver to or of any

other breach of the same or any other covenant, agreement or obligation unless in each case so stated in a writing signed by landlord or tenant, whichever the case may be.

**4.** George Herbert, *Jacula Prudentum* (1651); *see also* B. Franklin, *Poor Richard's Almanac* (1758) ("A little neglect may breed great mischief ... for want of nail, the shoe was lost, for want of a shoe, the horse was lost, for want of a horse, the rider was lost ...").